**Defendants' Exhibit 2**



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

National Policy



**ORDER
5190.6B**

Effective Date:
September 30, 2009

**SUBJ:**   FAA Airport Compliance Manual

The Airport Compliance Program ensures airport sponsors' compliance with their federal obligations in the form of grant assurances, surplus and nonsurplus obligations, or other applicable federal law. The Airport Compliance Program is administered by the FAA headquarters Airport Compliance Division (ACO-100) based in Washington, DC.

This handbook provides guidance to FAA personnel on interpreting and administering the various continuing commitments airport sponsors make to the U.S. Government when they accept grants of federal funds or federal property for airport purposes. The handbook (i) analyzes the various federal obligations set forth in legislatively mandated airport sponsor assurances, (ii) addresses the nature of the assurances and the application of the assurances in the operation of public use airports, and (iii) facilitates interpretation of the assurances by FAA personnel. This manual was designed to provide guidance to FAA personnel pertaining to the Federal Aviation Administration (FAA) Airport Compliance Program.

*Randall S. Fiertz*

Randall S. Fiertz
Director
Airport Compliance and Field Operations Division (ACO-1)

grant obligations have expired, the FAA should review all land grants at the airport to ensure that no land grant contains a perpetual obligation. All AIP land grants and most surplus property deeds of conveyance include the obligation to operate the airport property as an airport in perpetuity.

Additionally, there are three assurances for which the obligation continues without limit as long as the airport is used as a public use airport: Grant Assurance 23, *Exclusive Rights;* Grant Assurance 25, *Airport Revenues;* and Grant Assurance 30, *Civil Rights.*

Private sponsors have the added requirement that the useful life of federally assisted projects shall be no less than 10 years from the date of acceptance of federal aid. (Public sponsors do not have this minimum useful life requirement.) The actual grant agreement should be consulted to verify the federal obligations sponsors agreed to and to ensure the sponsor is being held to those assurances. This Order does not replace reading the obligating documents.

**4.4. The Useful Life of Grant Funded Projects.** The useful life of a federally funded airport development project extends for the period of time during which it is serviceable and usable with ordinary day-to-day maintenance.

Reconstruction, rehabilitation, or major repair of a federally funded airport project without additional federal aid does not automatically extend the duration of its useful life as it applies to grant agreements. Generally, improvements are presumed to last at least 20 years because they are built to FAA standards. If new grants are issued for reconstruction, rehabilitation, or major repair, a new useful life period begins.

An airport sponsor cannot shorten its obligations by allowing projects to deteriorate. FAA regional airports divisions make the determination of when the useful life has expired on a federally funded project that needs reconstruction, rehabilitation, or major repair in order to continue serving the purpose for which it was developed. See paragraph 4.6.h of this chapter for detailed guidance on the duration of grant obligations.

> *In cases where land was acquired with federal assistance,*
> *the federal obligations relating to the use, operation, and*
> *maintenance of the airport generally remain in perpetuity.*

**4.5. Airport Sponsor Compliance.** Legislatively mandated sponsor assurances have varied over time due to statutory amendments and project specific circumstances. Therefore, in assessing an airport sponsor's compliance status, the FAA must review each grant agreement entered into by the airport sponsor and the FAA in order to determine the airport sponsor's federal obligations accurately and to assess the sponsor's compliance with the applicable assurances.

**4.6. Federal Obligations under the Basic Grant Assurance Requirements.** This section discusses the different assurance lists and airport grant programs. Airport sponsors accept these

assurances as a condition of receiving grant funds under the AIP for projects that involve airport development, noise mitigation, and airport planning.

When the airport sponsor accepts the grant, the assurances become binding contractual federal obligations between the sponsor and the FAA. It is the responsibility of the ADOs and regional airports divisions to ensure sponsors understand and comply with their assurances.

**a. Standard Sponsor Assurances.** FAA uses three separate sets of standard sponsor assurances:

**(1).** Airport Sponsors (owners/operators).

**(2).** Planning Agency Sponsors.

**(3).** Nonairport Sponsors Undertaking Noise Compatibility Program Projects (referred to as nonairport sponsor assurances).

**b. Types of Grant Programs or Projects.** There are five types of airport grant programs or projects that include assurances from one of the three sets of standard assurances:

**(1).** Airport development programs undertaken by an airport sponsor.

**(2).** Noise compatibility programs undertaken by an airport sponsor.

**(3).** Planning projects undertaken by an airport sponsor.

**(4).** Planning projects undertaken by planning agency sponsors.

**(5).** Noise compatibility programs undertaken by nonairport sponsors.

**c. Groupings.** Grant agreements list the assurances in three separate groups:

**(1).** Group "A" *General*, sets forth the basic requirement



*The FAA may also award grants to nonairport sponsoring government entities for noise compatibility programs. These could include adjacent communities to the airport that are impacted by aircraft landing or taking off, but which are not sponsors of that airport. The assurances for these grants bind the recipients to specific federal obligations. While these assurances are similar to the airport sponsor assurances, there are differences; they follow a different numbering scheme and exclude airport-specific requirements. (Photo: FAA)*

09/30/2009                                                                                    5190.6B

binding the sponsor to all federal grant assurances.

**(2).** Group "B" *Duration and Applicability*, establishes the length of time that assurances remain in effect and identifies which assurances apply to the various programs or projects.

**(3).** Group "C" *Sponsor Certification*, lists all of the standard assurances that the sponsor must adhere to under the grant agreement.

 **d.  Group A.**   The *General* assurance states the basic requirement for the sponsor to abide by all applicable assurances as a condition of accepting a federal grant for airport development, noise compatibility, and airport planning.  The general assurance requires the sponsor to include these assurances as part of its grant application.  When the sponsor accepts the grant offer, FAA incorporates these assurances into the grant agreement.  When the sponsor accepts, the agreement binds both the federal government and the sponsor to its terms.

**e.  Group B.**  The *Duration and Applicability* assurance identifies those assurances that apply to different types of grant programs and specifies the length of time the assurances remain in force.

**f.   Group C.**   As of September 2009, there were 39 numbered assurances in the *Sponsor Certification* group for airport sponsors.  All of these assurances apply to airport development programs and noise compatibility programs undertaken by an airport sponsor, but only 11 of them apply to planning projects undertaken by an airport sponsor.

**g. Grant Assurance Applicability.**

**(1). Airport Sponsor Airport Development and Noise Compatibility.**   Requirements for airport development and noise compatibility programs undertaken by airport sponsors are the same.  All 39 standard grant assurances for airport sponsors apply.

**(2). Airport Sponsor Planning.**   Requirements for airport sponsor planning projects are different from airport sponsor development or noise compatibility programs.  Several of the numbered assurances for airport sponsors apply to airport planning projects: Grant Assurance 1, *General Federal Requirements*; Grant Assurance 2, *Responsibility and Authority of the Sponsor*; Grant Assurance 3, *Sponsor Fund Availability*; Grant Assurance 5, *Preserving Rights and Powers*; Grant Assurance 6, *Consistency with Local Plans*, Grant Assurance 13, *Accounting System, Audit, and Record Keeping Requirements*; Grant Assurance 18, *Planning Projects*; Grant Assurance 30, *Civil Rights*; Grant Assurance 32, *Engineering and Design Services*; Grant Assurance 33, *Foreign Market Restrictions*; and Grant Assurance 34, *Policies, Standards, and Specifications*.  The terms, conditions, and assurances of the grant agreement shall remain in full force and effect during the life of the planning project.  In addition, Grant Assurance 25, *Airport Revenues*, will apply where the planning grant applies to a specific airport.

09/30/2009                                                                                                                                        5190.6B

**(3). Nonairport Sponsor Noise Programs.** The FAA may also award grants to nonairport sponsoring government entities for noise compatibility programs. These would include adjacent communities impacted by aircraft noise, but which are not sponsors of that airport. The assurances for these grants bind the sponsors to specific federal obligations. While these assurances are similar to the airport sponsor assurances, there are some differences. Specifically, these assurances follow a different numbering scheme and exclude



*Grant Assurance 4, Good Title, requires the airport sponsor to assure that good title exists or that the sponsor will acquire good title for any property where federal funds will be used. For airport development programs, the sponsor must assure that the sponsor, another public agency, or the federal government holds good title to the airfield or airport site. If not, the sponsor must give its assurance that it will acquire good title satisfactory to the Secretary. (Photo: FAA)*

airport-specific requirements. For example, airport sponsor Grant Assurance 19, *Operation and Maintenance*, includes a section on operating the airport to serve aeronautical users. This applies only to airport sponsors and is not part of the assurance for nonairport sponsors. For nonairport sponsors, the comparable assurance on operation and maintenance includes only the last section of Grant Assurance 19, *Operation and Maintenance*, which requires the grant recipient to operate and maintain noise compatibility items or noise program implementation items obtained with federal funds. Even though the assurances for airport sponsors and nonairport sponsors have different numbering and vary slightly, the subjects addressed are consistent.

**(4). Planning Agency Sponsors.** A planning agency sponsor is a governmental entity that has planning responsibilities for an area that includes an airport, but is not the airport sponsor. A separate set of standard assurances applies to planning agency sponsors. Several of the applicable assurances mirror the assurance topics for airport sponsor planning projects, but the language is slightly different.

09/30/2009                                                                 5190.6B

*A planning agency sponsor is a governmental entity that has planning responsibilities for an area that includes an airport, but is not the airport sponsor.*



*Although not specifically mentioned in the standard grant assurances, the accepted useful life for personal property acquisitions, such as aircraft rescue and fire fighting (ARFF) or snow removal equipment is generally less than 20 years. The federal obligations associated with new ARFF equipment purchased with AIP funds is ten (10) years unless stated otherwise. The normal useful life of a piece of snow removal equipment is about ten (10) years. (Photos: FAA)*

**h.   Grant   Assurance Duration.**

**(1). General.**  Most of the assurances remain in effect for the useful life of the facilities developed, equipment acquired, or project items installed in the facilities, not to exceed 20 years.  Some assurances have no limit on the duration of terms; they remain in effect as long as the airport remains an airport.  This is true for Grant Assurance 23, *Exclusive Rights;* Grant Assurance 25, *Airport Revenues;* and Grant Assurance 30, *Civil Rights.* In addition, under AIP grants, the duration of the terms, conditions, and assurances do not expire with respect to real property acquired with federal funds (land and appurtenances, when



applicable) as covered by Grant Assurance 4, *Good Title*; Grant Assurance 31, *Disposal of Land*; and Grant Assurance 35, *Relocation and Real Property Acquisition*.

**(2). Intended Purpose.**  The FAA Office of Chief Counsel has indicated the FAA may determine the useful life of an airport or airport facility has expired if it is no longer used or needed for the purpose for which it was developed.

09/30/2009                                                                                      5190.6B

**c. FAA Determination.**  The FAA should predicate its concurrence with any lien, mortgage, or other encumbrance to federally obligated property on a factually based and thoroughly documented determination.  Ideally, the FAA office working the issue should ask the sponsor to execute a declaration recognizing that the federal grant obligations survive a foreclosure or bankruptcy.  The possibility of foreclosure or other action adverse to the airport should be so remote that it reasonably precludes the possibility that such a lien, mortgage, or other encumbrance will prevent the sponsor from fulfilling its federal obligations.

**6.11. New Sponsor Document Review.**  Generally the ADO or regional airports division will determine whether a potential sponsor is capable of assuming federal responsibilities.  This review requires that the sponsor be legally, financially, and otherwise able to assume and carry out the certifications, representations, warranties, assurances, covenants, and other federal obligations required of the sponsor and contained in the Airport Improvement Program (AIP) project application and grant agreement forms.

The sponsor must also show that it has the authority to act as a sponsor.  The FAA must also obtain an opinion from the sponsor's attorney as to the sponsor's legal authority to act as a sponsor and whether that authority extends to fulfilling its grant assurance responsibilities.

**a. Purpose.**  The review is intended to ensure that the new sponsor has and will maintain the necessary control of the airport needed to carry out its commitments to the federal government.  During its review, the ADO or regional airports division will identify any terms and conditions of a lease, contract, or agreement that could prevent the realization of the full benefits for which the airport was constructed or that could render the sponsor noncompliant with its federal obligations.  The sponsor may place a standard clause in all its agreements that the terms and conditions of the agreement shall be subordinate to the federal grant assurances and any surplus property federal obligations.

**b. Aeronautical Access to Facilities.**  The review ensures that the sponsor will make the airport facilities available to the public on reasonable terms without unjust discrimination, as required by Grant Assurance, 22, *Economic Nondiscrimination.*  Any lease, contract, or agreement granting a tenant the right to serve the public on the premises of a federally obligated airport should not interfere with the sponsor's ability to maintain sufficient control over the operation of the airport to guarantee that aeronautical users will be given fair access to the airport.

**c. Self-sustaining.**  The review looks to ensure that the sponsor maintains a fee and rental structure for facilities and services that will make the airport as self-sustaining as possible, as required by Grant Assurance 24, *Fee and Rental Structure*.

**d. Good Title.**  The review will ensure that the sponsor has, or will have, good title to the airfield, as required by Grant Assurance 4, *Good Title.*

**e. No Granting of Exclusive Rights.**  The review will ensure that the sponsor has not granted an exclusive right for aeronautical use of the airport, as required by Grant Assurance 23, *Exclusive Rights.*

09/30/2009                                                                                           5190.6B

**f. Revenue Use.** The review will ensure that the sponsor makes proper use of its airport revenues, per Grant Assurance 25, *Airport Revenues*, and FAA's *Policy and Procedures Concerning the Use of Airport Revenue*, 64 Fed. Reg. 7696, February 16, 1999, (*Revenue Use Policy*), found in Appendix E of this Order.

**g. Examination of Documents.** During the review, the ADO or regional airports division must examine the following documents:

**(1).** The public agency's enabling legislation or act that gives it the authority to operate and own the airport(s).

**(2).** The lease, operations, management, or transfer agreements for the specific airport.

**(3).** The Exhibit "A" map, ALP, and land inventory map identifying grant obligated land.

**(4).** The assumption agreement for existing grants, federal grant obligations, and disposition and status of transferred grants.

**(5).** Any other agreements between the parties relating to the terms of the transfer and the new sponsor's operation of the airport.

**h. Sponsor Eligibility.**

Eligibility to receive funds under the AIP is contingent upon the type of sponsor and the type of activity for which the funds are sought.

**6.12. Title and Property Interest.**

**a. Title Requirement (Grant Assurance 4, *Good Title*).**

Section 47106(b)(1) of Title 49 U.S.C. requires that no project grant application for airport development may be approved by the Secretary unless the sponsor, a public agency, or the United States holds good title (satisfactory to the Secretary) to the airfield, or gives assurance to the Secretary that good title will be



*The sponsor must maintain the rights and powers to develop or improve the airfield as it sees fit, regardless of the desire and views of its agent or tenants, and without interference or hindrance of same. For example, the airport may choose to install gates to control pedestrian or general public access to ramp areas as shown here at the Lunken Airport in Cincinnati, Ohio. The fact that a tenant sees no reason for the action does not prevent the airport from doing so. ( Photo: FAA)*

09/30/2009                                                                 5190.6B

*Federal grant agreements require sponsors to conform their actions to the Airport Layout Plan. The erection of any structure or any alteration in conflict with the plan as approved by the FAA may constitute a violation of Grant Assurance 29, Airport Layout Plan.*



*In some cases, it is acceptable to close an airport temporarily for an aeronautical activity, such as an air show. Such closing should be well publicized in advance including issuing notices to airmen (NOTAMs) to minimize any inconvenience to the flying public. (Photo: U.S. Navy)*

**b. Abandonment.** The sponsor may not abandon or suspend maintenance on any operational facility currently reflected on an approved ALP as being available for operational use. The conversion of any area of airport land to a substantially different use from that shown in an approved ALP could adversely affect the safety, utility, or efficiency of the airport and constitute a violation of the federal obligation assumed. For example, the construction of a corporate hangar on a site identified on the ALP for future apron and taxiway use would be a departure from the controlling ALP. This could impair the utility of the airport and violate sponsor federal obligations. When making a periodic compliance review of an ALP, the inspector should consider whether grant acquired land is still needed for airport purposes, particularly when it is separated from the airport property by a highway or railway.

**7.19. Exhibit "A" and Airport Property Map.** Grant Assurance 29, *Airport Layout Plan*, requires the sponsor to submit an ALP. Airports also must have an airport property map, commonly referred to as Exhibit "A." The airport property map indicates how various tracts of airport property were acquired, including the funding source. The primary purpose of the airport property map is to provide information on the use of land acquired with federal funds and/or the use of surplus property. The airport property map is important for determining land needed for airport purposes and the proper use of land sale proceeds. In many instances, but not all, the Exhibit "A" to the ALP will include the land inventory requirements. The Exhibit "A" map delineates all airport property owned, or to be acquired, by the sponsor regardless of whether the federal government participated in the cost of acquiring any or all such land. The FAA relies on this map when considering any subsequent grant of funds. In fact, The FAA AIP Handbook, Order 5100.38, requires a review of the ALP during project formulation. Any land identified on the Exhibit "A" map may not be disposed of or used for any different purpose without FAA consent.

# Chapter 22.    Releases from Federal Obligations

**22.1. Introduction.** This chapter discusses the laws, regulations, policies, and procedures pertaining to sponsor requests for a release from federal obligations and land use requirements. The FAA Administrator's authority to grant a release depends on the type of obligating document, such as a property conveyance or grant agreement.

Any property, when described as part of an airport in an agreement with the United States or defined by an airport layout plan (ALP) or listed in the Exhibit "A" property map, is considered to be "dedicated" or obligated



*The FAA Administrator's authority to grant a release depends on the type of obligating document, such as a property conveyance or grant agreement. It also depends on the type of grant agreement, such as airport planning, noise mitigation, or airport improvement. Furthermore, the timing and circumstance of the particular document affects the Administrator's ability to grant a release. In all cases, the benefit to civil aviation is the FAA's prime concern. (Photo: CAP)*

property for airport purposes by the terms of the agreement. If any of the property so dedicated is not needed for present or future airport purposes, an amendment to, or a release from, the agreement is required.

In all cases, the benefit to civil aviation is the FAA's prime concern and is represented by various considerations. These include the future growth in operations; capacity of the airport; the interests of aeronautical users and service providers; and the local, regional, and national interests of the airport. It is the responsibility of the FAA airports district offices (ADOs) and regional airports divisions to review the release request and to execute the release document, if appropriate.

**22.2. Definition.** A "release" is defined as the formal, written authorization discharging and relinquishing the FAA's right to enforce an airport's contractual obligations. In some cases, the release is limited to releasing the sponsor from a particular assurance or federal obligation. In other cases, a release may permit disposal of certain airport property.

**22.3.  Duration and Authority.**  When the duration of the physical useful life of a specific grant improvement ends, the sponsor is automatically released from its federal obligations for that grant without any formal action from the FAA.  The physical useful life of such a facility extends to the time it is serviceable and useable with ordinary day-to-day maintenance.  However, airport land acquired with federal assistance under the Airport Improvement Program (AIP) and/or conveyed as surplus or nonsurplus property is federally obligated in perpetuity (forever).

The Administrator has delegated to ADOs and regional offices the authority to release, modify, or amend assurances of individual sponsor agreements under specific circumstances as prescribed in this chapter.  ADOs and regional airports divisions do not have the authority to modify the list of assurances in a grant agreement.  In addition, ADOs do not have the authority to effect a release permitting the abandonment, sale, or disposal of a complete airport.  (See Order 1100.5, *FAA Organization - Field*, issued February 6, 1989.)

**22.4. FAA Consideration of Releases.**

**a. General**.  Within the specific authority conferred upon the FAA Administrator by law, the Administrator will, when requested, consider a release, modification, reform, or amendment of any airport agreement to the extent that such action has the potential to protect, advance, or benefit the public interest in civil aviation.  Such action may involve only relief from specific limitations or covenants of an agreement or it may involve a complete and total release that authorizes subsequent disposal of federally obligated airport property.  Major considerations in granting approval of a release request include:

**(1).** The reasonableness and practicality of the sponsor's request.

**(2).** The effect of the request on needed aeronautical facilities.

**(3).** The net benefit to civil aviation.

**(4).** The compatibility of the proposal with the needs of civil aviation.

Any release having the effect of permitting the abandonment, sale, or disposal of a complete airport must be referred to the Director of Airport Compliance and Field Operations (ACO-1) for approval by the Associate Administrator for the Office of Airports (ARP-1).  (See Order 1100.5, *FAA Organization – Field*, issued February 6, 1989.)

**b. Types of Federal Obligations.**  Generally, a sponsor can be federally obligated by the following actions:

**(1).** Acceptance of a federal grant for an aeronautical improvement, including land for aeronautical use.  Property listed on the Exhibit "A" of a grant agreement is obligated, regardless of how it was acquired or its purpose.

**(2).** Acceptance of a conveyance of federal land.

**(3).** Federal grants for a military airport program (MAP), for noise, and for planning. Planning grants contain a limited list of assurances and do not impose all of the obligations of a development grant.

**(4).** Acquisition of property with airport revenue, regardless of whether the property is on the Exhibit "A" or ALP.

**(5).** Designation of property for aeronautical purposes on an ALP. Once designated for aeronautical use, the property may not be used for nonaeronautical purposes without FAA approval.

**c. Types of Release Requests.** Various conditions and circumstances can affect the manner and degree of sponsor federal obligations and the procedures for release from these obligations. A sponsor can request different kinds and degrees of release, including the following general categories:

**(1).** Change in the use, operation, or designation of on-airport property.

**(2).** Release and removal of airport dedicated real or personal property or facilities for disposal and/or removal from airport dedicated use.

**22.5. Request for Concurrent Use of Aeronautical Property for Other Uses.**

If aeronautical land is to remain in use for its primary aeronautical purpose but also be used for a compatible revenue-producing nonaeronautical purpose, no formal release request is required. This is considered a concurrent use of aeronautical property and requires FAA approval. Aeronautical property may be used for a compatible nonaviation purpose while at the same time serving the primary purpose for which it was acquired. For example,



*The FAA will consider releases from federal obligations, changes in use, and changes in designation according to the types of release requests in connection with the various federal obligations. In some cases, FAA's approval of a change in use is not a release of a specific federal obligation. Rather, it may represent FAA's concurrence with a sponsor's proposed change in use to eliminate any potential impact on a general federal obligation to provide aeronautical access and to operate and maintain infrastructure. For example, the FAA should not release property on the approach end of a runway if this results in a structure or construction that would impact the airport. As shown here, the highway on the lower left corner of the photograph has resulted in an extensive displaced threshold, diminishing the utility of the airport. (Photo: CAP)*

there may be concurrent use of runway clear zone land and low growing crops to generate revenue.

Airport sponsors considering requests to use airport land for recreational purposes who are planning future airport development projects should assess potential applicability of section 4(f) of the Department of Transportation Act of 1966 (49 United States Code (U.S.C.) § 303).[49] [50]

### *Airport sponsors considering requests to use airport land for recreational purposes who are planning future airport development projects should assess potential applicability of section 4(f) of the Department of Transportation Act of 1966 (49 U.S.C., recodified at section § 303).*

**a. Surplus Property Land and Concurrent Use.**  In some cases, surplus property land is designated as aeronautical use by its transfer documents.  If so, a sponsor must request a release of its federal obligation to use such land for aeronautical purposes if it wishes to use it for nonaeronautical purposes exclusively.  However, if the sponsor will continue to use the land for its primary aeronautical function, then a compatible nonaeronautical use could be considered a concurrent use.  Such a concurrent use would not require a release from the surplus property requirement.

The FAA should review such concurrent use to ensure it is compatible with the primary aeronautical use of the surplus property land.  FAA should also confirm that nonaeronautical use does not prevent the use of the land for needed aeronautical support purposes.  Surplus property designated for aeronautical use should not be approved for concurrent nonaeronautical use if such use degrades – or potentially degrades – the aeronautical utility of the parcels in question.

**b. Grant Land and Concurrent Use.**  Land purchased pursuant to an FAA grant is presumed to be in pursuit of an aeronautical purpose.  However, some grant land may be suitable for concurrent use.  Requests to use grant land for concurrent use should be approved by FAA.  This consent can be in the form of an amendment to an ALP.  Grant land may be used for a compatible nonaviation purpose while at the same time serving the primary purpose for which it was acquired.

---

[49] Department of Transportation (DOT) Section 4(f) property refers to publicly owned land of a public park, recreation area, wildlife or waterfowl refuge, or historic site of national, state, or local significance.  It also applies to those portions of federally designated Wild and Scenic Rivers that are otherwise eligible as historic sites or that are publicly owned and function as – or are designated in a management plan as – a significant park, recreation area, or wildlife and waterfowl refuge.  (See 49 U.S.C. § 303.)

[50] See 23 CFR § 774.11(g) and FHWA and FTA Final Rule; Parks, Recreation Areas, Wildlife and Waterfowl Refuges, and Historic Sites, 73 F.R. 13368-01, March 12, 2008 (Interpreting DOT Section 4(f) not to apply to temporary use of airport property.)

As with surplus property, grant land designated for aeronautical use should not be approved for concurrent nonaeronautical use if such use degrades – or potentially degrades – the aeronautical utility of the parcels in question.

**22.6. Request for Interim Use of Aeronautical Property for Other Uses.** The ADOs and regional airports divisions may consent to the interim use (not more than five (5) years) for nonaviation purposes of dedicated aeronautical land. This is the case whether or not the land was acquired with grant funds, is surplus property, or is otherwise dedicated for aeronautical use. A request for a use that would exceed three (3) years should be subject to concurrent use guidelines. FAA approval shall not be granted if the FAA determines that an aeronautical demand is likely to exist within the period of the proposed interim use.

Aeronautical demand might be demonstrated by the existence of a qualified aeronautical service provider expressing interest in such property for aeronautical use, or by projected growth in airport operations. Interim use should not be incompatible with current or foreseen aeronautical use of the property in question or other airport property. If the land in question is grant land, FAA consent or approval must be based on a determination that the property as a whole has not ceased to be used or needed for airport purposes within the meaning of the applicable statute.

Interim use represents a temporary arrangement for the use of airport land for nonaeronautical purposes. Therefore, it must be anticipated that the interim use will end and the land will be returned to aeronautical use. If a proposed nonaeronautical use will involve granting a long-term lease or constructing capital improvements, it will be difficult – if not impossible – to recover the land on short notice if it is needed for aeronautical purposes. Such a use is not interim and should not be treated as such. Therefore, interim use should not be approved if the proposed use will prevent the land from being recovered on short notice for airport purposes. Interim use proposals should be carefully evaluated to ensure that what is being proposed as a temporary arrangement is not really a long-term or permanent change in land use.

> *The ADOs and regional airports divisions may consent to the interim use of dedicated aeronautical property for nonaviation purposes. Regardless of how the property was acquired, these FAA offices have the authority to decide whether the airport may use such property for nonaeronautical purposes or not.*

**22.7. Release of Federal Maintenance Obligation**. A partial release may be granted to an airport sponsor to remove the obligation to maintain specific areas of the airport pursuant to Grant Assurance 19an, *Operation and Maintenance*. Such circumstance would occur when airport facilities are no longer needed for civil aviation requirements. It is unlikely that a total release would be granted under the circumstances. Note that a release from the maintenance obligation is not a release from all the terms of Grant Assurance 19 since many of the obligations in that assurance apply to the airport as a whole.

09/30/2009                                                                                          5190.6B

**a. Other Terms.**  A release of the federal maintenance obligation does not constitute a release of the land from other applicable terms and conditions or covenants with the applicable compliance agreements.  The most common example of such a release is when airport sponsors request the FAA to release a particular parcel of land or facility from the federal obligation dedicating it to aeronautical use.  This, in turn, may permit revenue producing nonaeronautical use of the parcel.  The same result can be obtained without a formal maintenance obligation release, simply by approving a change to the ALP showing the parcel in question as nonaeronautical.

**b. Unsafe.**  When it becomes unsafe for aeronautical purposes, the airport sponsor may have to discontinue an aviation use (i.e., a dilapidated taxiway).  FAA's Flight Standards office should be involved in all matters related to decisions dealing with, or relying upon, a safety assessment.  If the airport sponsor no longer requires the use of the runway, it must seek a release from Grant Assurance 19, *Operation and Maintenance*.

**22.8. Industrial Use Changes.** Certain surplus property restrictions prohibiting the use of the property as an industrial plant, factory, or similar facility have been repealed by Public Law (P.L.) No. 81-311.  The FAA will issue the releases or corrections to eliminate restrictions that may have been repealed or modified by laws, such as these industrial use restrictions.

**22.9. Release of National Emergency Use Provision (NEUP).**

**a. General.**  Practically all War Assets Administration (WAA) Regulation 16 and P.L. No. 80-289 instruments of disposal of real and related personal property also contain the National Emergency Use Provision (NEUP).  Under this provision, the United States has the right to make exclusive or nonexclusive use of the airport or any portion thereof during a war or national emergency.  This provision is similar in all such instruments.



*A request for release of the NEUP should be limited to parcels that are no longer needed for aviation purposes.  The NEUP represents the U.S. Government's interest and ability to reactivate an airport as a military facility in case of war or national emergency.  This provision has been used several times.  One example is the former Naval Air Station (NAS) Miami, which in 1952 was reactivated as a Marine Corps Air Station during the Korean War.  The Navy Department took over the facility from its civilian sponsor from 1952 through 1958, after which it was returned to civilian control.  In other cases, old World War II installations decommissioned after the War were never reactivated.  Since many had excessive parcels of land, such as the one depicted here, the FAA has granted several releases for disposal over the years and, if permitted by DoD, released the NEUP as well. (Photo: USAF)*

(See a sample NEUP legal description and release request at the end of this chapter.)

**b. Procedures.**  The FAA may grant a release from this provision, which is often referred to as the recapture clause.  When requesting a release of the NEUP clause, the airport sponsor must provide the FAA with adequate information, including property drawings and property description, in duplicate.  However, the concurrence of the Chairman of the Department of Defense (DoD) Airports Subgroup Office [HQ USAF/XOO-CA, 1480 Air Force Pentagon, Room 4D1010, Washington DC 20330-1480] is also required.  FAA must make the request to DoD.

The FAA regional airports division will forward the documentation required to the FAA headquarters Airport Compliance Division (ACO-100).  If approved, ACO-100 will then request DoD's concurrence.    Upon receipt of DoD concurrence, ACO-100 will forward the determination to the FAA regional airports division for release of the NEUP.

The FAA regional airports division must provide a copy of the release instrument to the appropriate Army Corps of Engineers District Engineer's office.  The FAA will not approve a request for release of the NEUP involving the whole airport.  In addition, DoD generally does not concur with a request for release of the NEUP if the release involves actual runways, taxiways, or aprons.  A request for release of the NEUP should be limited to parcels that are no longer needed for aviation purposes.

The NEUP represents the U.S. Government's interest in and ability to reactivate an airport as a military facility in case of war or national emergency.  This provision has been used several times.  One example is the former Naval Air Station (NAS) Miami, which in 1952 was reactivated as a Marine Corps Air Station during the Korean War.  The Navy Department took over the facility from its civilian sponsor from 1952 and 1958, after which it was returned to civilian control.

In other cases, old World War II installations decommissioned after the war were never reactivated.  Since many had excessive parcels of land, the FAA granted several releases for disposal over the years and, when permitted by DoD, released the NEUP as well.

**22.10. Release from Federal Obligation to Furnish Space or Land without Charge.**  FAA may release a sponsor from Grant Assurance 28, *Land for Federal Facilities*.  Before granting this release, the ADO or regional airports division should evaluate all pertinent facts and circumstances and obtain concurrence from other offices within the FAA such as Air Traffic and Airways Facilities, the National Oceanic and Atmospheric Administration (NOAA), or other interested and qualified federal entities.  The office may accomplish the release either by discharging the sponsor from the assurance or through an amendment to the grant agreement.

**22.11. Release of Reverter Clause.**  In order to promote appropriate private investment in airport facilities, the sponsors of surplus property may seek to remove a provision giving the United States the option to revert title to itself in the event of default of the sponsor to the conditions of its surplus property federal obligations.  This reverter clause is an important remedy intended to be reserved to the United States Government; it will not normally be released

and the ADOs cannot grant such a release.  Any such proposal to release the sponsor from the
reverter clause shall be referred to ACO-1 for consideration.

**22.12. Exclusive Rights Federal Obligations cannot be Released without Release and
Disposal of the Parcel or Closure of Airport.**  Any airport that has received federal assistance
is subject to the exclusive rights provision discussed in chapter 8 of this Order, *Exclusive Rights*.
This federal obligation exists for as long as the airport is used as an airport.  Therefore, there is
no provision for a release from this federal obligation without disposal of the parcel involved or
disposal of the entire airport.

**22.13. Federal Obligations Imposed with the Airport Layout Plan and Exhibit "A."**  A
sponsor has a federal obligation to maintain an up-to-date ALP and is required to present an
accurate Exhibit "A" upon the execution of a federal grant.  The sponsor is required to continue
developing the airport according to the approved land uses associated with those documents and
in accordance with proposed changes submitted to the ADO or regional airports division for
consideration, documentation, and approval.

**22.14. Procedures for Operational Releases or Requests for Change in Use.**  For releases
other than land, the sponsor must begin with a formal request signed by an authorized official.
Although a specific format is not required, the request should include the following:

**a.** Affected agreement(s)/ federal agreements.

**b.** Modification requested.

**c.** Need for the modification.

**d.** Facts and circumstances that justify the request.

**e.** State and local law pertinent to the document.

**f.** Description of facilities involved.

**g.** Source of funds for the facility's original acquisition.

**h.** Present condition of facilities.

**i.** Present use of facilities.

**22.15. Release of Federal Obligations in Regard to Personal Property, Structures, and
Facilities.**  Personal property, structures, and facilities may have been acquired through a federal
surplus property conveyance, a federal grant, or through purchase with airport revenue.  Personal
property, structures, or facilities acquired with federal assistance require a release or federal
procedure.  Personal property, structures, or facilities acquired through nonfederal sources and
not using airport revenue do not require a release or federal procedure.  Nonetheless, these items
of personal property, structures, or facilities should be considered assets of the airport account.

**a. Surplus Property Releases of Personal Property, Structures, and Facilities.**  Surplus
airport property falling into the categories of personal property, structures, and facilities may be
released from all inventory accountability (whether or not the airport at which they are located is
included in chapter 13, *Civil Airports Required by Department of Defense for National*

09/30/2009                                                                      5190.6B

*Emergency Use,* of FAA Order 5190.2R, *List of Public Airports Affected by Agreements with the Federal Government*) when it has been determined that such property acquired with federal funds:

**(1).** Is beyond its useful life;

**(2).** Has deteriorated beyond economical repair or rehabilitation;

**(3).** Is no longer needed;

**(4).** Has been replaced;

**(5).** Is to be traded to obtain similar or other property needed for the airport;

**(6).** Has been destroyed or lost by fire or other uncontrollable cause and the ensured value, if any, has been credited to the airport fund; or

**(7).** Has been, or should be, removed or relocated to permit needed airport improvement or expansion, including salvage or other use, elsewhere on an airport.

**b. Abandonment, Demolition, or Conversion of Grant Funded Improvements.**  The FAA may grant a release that permits the sponsor to abandon, demolish, or convert property (other than land) before the designated useful life expires.  The ADO or regional airports division may grant the release when any of the following apply:

- The facility is no longer needed for the purpose for which it was developed.

- Normal maintenance will no longer sustain the facility's serviceability.

- The facility requires major reconstruction, rehabilitation, or repair.

**c. Disposal of Grant Funded Personal Property.**  Grant funded personal property should be maintained on the sponsor's inventory for the useful life of the specific equipment.  The federal obligation regarding personal property expires with the useful life of the specific piece of property.  Should the sponsor desire to dispose of personal property prior to the expiration of its useful life, it should consult with the ADO or regional airports division prior to seeking release from its obligations.

**d. Reinvestment of Federal Share.**  After the FAA has determined that a release of grant funded improvements is appropriate and that the release serves the interest of the public in civil aviation, the FAA may require the sponsor, as a condition of the release, to reimburse the federal government or reinvest in an approved AIP eligible project.  The amount to be reimbursed or reinvested is an amount representing the unamortized portion of the useful life of the federal grant remaining at the time the facility will be removed from aeronautical use. Special circumstances involving the involuntary destruction of the improvement or equipment would be an exception.  Depreciation of personal property may follow a different formula related to its

useful life or actual value. The FAA will require a specific project or projects and a timeline for completion for reinvestment in a new AIP eligible project.

> **All land described in a project application and shown on an Exhibit "A" constitutes the airport property federally obligated for compliance under the terms and covenants of a grant agreement. A sponsor is federally obligated to obtain FAA consent to delete any land described and shown on the Exhibit "A."**

**22.16. All Disposals of Airport Real Property.** All land described in a project application and shown on an Exhibit "A" constitutes the airport's federally obligated property. A sponsor is federally obligated to obtain FAA consent to delete any land described and shown on the Exhibit "A."

FAA consent shall be granted only if it is determined that the property is not needed for present or foreseeable public airport purposes. When federally obligated land is deleted, the Exhibit "A" and the approved ALP should be revised as appropriate. Where the action involves the deletion of land not acquired with federal financial assistance, there is no required reimbursement of grant revenues. However all proceeds are treated as airport revenue. Also, the airport account must receive fair market value (FMV) compensation for all deletions of airport real property from the airport (i.e., from Exhibit "A") even if the sponsor does not sell the property or sells the property below fair market value.



*After airport property is released, there are continuing restrictions on the released property. The ADO or regional airports office must include in any deed, lease, or other conveyance of a property interest to others a restriction that (a) prohibits the erection of structures or growth of natural objects that would constitute an obstruction to air navigation, and (b) prohibits any activity on the land that would interfere with, or be a hazard to, the flight of aircraft over the land or to and from the airport, or that interferes with air navigation and communication facilities serving the airport. The photo above, taken from one of Cincinnati Lunken Airport's runways, illustrates the clear runway safety areas (RSAs) resulting from not permitting the erection of obstacles near runways. (Photo: FAA)*

**a. Continuing Right of Flight over all Airport Land Disposals.**  A total release permitting sale or disposal of federally obligated land must specify that the sponsor is obligated to include in any deed, lease, or other conveyance of a property interest to another a reservation assuring the public rights to fly aircraft over the land released and to cause inherent aircraft noise over the land released.  The following language must be used:

This is hereby reserved to the (full name of the grantor or lessor), its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises herein (state whether conveyed or leased). This public right of flight shall include the right to cause in said airspace any noise inherent in the operation of any aircraft used for navigation or flight through the said airspace or landing at, taking off from, or operation on the (official airport name).

**b. Continuing Restrictions on Released Property.**  The ADO or regional airports division must include in any deed, lease, or other conveyance of a property interest to others a restriction that:

**(1).** Prohibits the erection of structures or growth of natural objects that would constitute an obstruction to air navigation.

**(2).** Prohibits any activity on the land that would interfere with or be a hazard to the flight of aircraft over the land or to and from the airport, or that interferes with air navigation and communication facilities serving the airport.  These restrictions are set forth in the instrument of release and identify the applicable height limits above which no structure or growth is permitted. The airport sponsor will compute these limits according to the currently effective FAA criteria as applied to the airport.  The ADO, regional airports division, and airport sponsor will not incorporate advisory circulars, design manuals, Federal Aviation Regulations (found in Title 14 Code of Federal Regulations (CFR)), or other such documents by reference in the instruments or releases issued by the FAA in lieu of actual computed limits.

**22.17. Release of Federal Obligations in Regard to Real Property Acquired as Federal Surplus Property.**

Airport sponsors receive surplus real property in many various sizes and shapes.  Often the property is not ideally sized or arranged to serve the evolving needs of the airport.  Adjustments can be made that benefit the airport.  The airport sponsor must convince the FAA that its plans for the use, and possible disposal, of surplus property benefit the airport.

**a. General Policy.**  A total release permitting the sale and disposal of real property acquired for airport purposes under the Surplus Property Act shall not be granted unless it can be clearly shown that the disposal of such property will benefit civil aviation.  If any such property is no longer needed to support an airport purpose or activity directly (including the generation of revenue for the airport), the property may be released for sale or disposal upon a demonstration that such disposal will produce an equal or greater benefit (to the airport or another public airport) than the continued retention of the land.

09/30/2009                                                                                                    5190.6B

In no case shall a release be granted unless the FAA determines that the land involved can be disposed of without adversely affecting the development, improvement, operation, or maintenance of the airport where the land is located. Any approved disposal must not be in excess of the present and foreseeable needs of the airport. Such a release has the effect of authorizing the conversion of a real property asset into another form of asset (cash or physical improvements) that better serves the purpose for which the real property was initially conveyed. This objective is not met unless an amount equal to the current fair market value (FMV) of the property is realized as a consequence of the release and such amount is committed to airport purposes.

**b. Purpose of Release**.  The airport owner requesting a release of surplus airport land must identify and support the reason for which the release is requested.  One justification of a release could be a showing that the expected net proceeds from the sale of the property at its current market value will be required to finance items of airport development and improvement where that need has been confirmed with FAA concurrence.



The FAA may consider requests for release from sponsors demonstrating that more value may be obtained from a disposal of specific parcels than the retention of those parcels for revenue production under leasing. Such a proposal would need to overcome the preference for holding surplus property land and leasing it for aeronautically compatible purposes that also generate airport revenue. Special care should be applied to ensure that no property that could be used for aeronautical purposes,

*In no case shall a release be granted unless the FAA determines that the land involved can be disposed of without adversely affecting the development, improvement, operation, or maintenance of the airport where the land is located. Any approved disposal must be in excess of the present and foreseeable future needs of the airport. Such a release has the effect of authorizing the conversion of a real property asset into another form of asset (cash or physical improvements) that better serves the purpose for which the real property was initially conveyed. Special care should be applied to ensure that no property that could be used for aeronautical purposes, including aeronautical protection, is released. This 1944 photograph of Grenier Field in New Hampshire, which is Manchester Airport today, clearly shows how important it is to apply the release process with caution. Unused land belonging to the base might be released and, over time, incompatible land uses could take hold. Today, Manchester airport is significantly encroached upon. (Photo: USAF)*

including aeronautical protection, is released.

**c. Determining Fair Market Value.**  A sale and disposal of airport property for less than its fair market value is inconsistent with the intent of the statute and shall not be authorized.  The value to be placed on land for which a release has been requested shall be based on the present appraised value (for its highest and best use) of the land itself and any federal improvements initially conveyed with the property.

In many cases, the original buildings and improvements may have outlived their useful life and a determination may have been made by FAA that no further federal obligation to preserve or maintain them exists.  If they have been replaced under such circumstances, or if additional improvements have been added without federal financing, the value of such improvements does not need to be included in the appraisal for purposes of determining the fair market value of the surplus property.  However, the value realized from the disposal of any improvement owned by the airport sponsor must be treated as airport revenue.

**d. Appraisals.**  A release authorizing the sale and disposal of airport land shall not be granted unless the fair market value has been supported by at least one independent appraisal report acceptable to the FAA.  Appraisals shall be made by an independent and qualified real estate appraiser.  The requirement for an appraisal may be waived if the FAA determines that:

**(1).** The approximate fair market or salvage value of the property released is less than $25,000;

     or

**(2).** The property released is a utility system to be sold to a utility company and will accommodate the continued airport use and operational requirements;

     or

**(3).** It would be in the public interest to require public advertising and sale to the highest responsible bidder in lieu of appraisals.

**e.  Application of Proceeds from the Sale of Surplus Real Property.**  Title 14 CFR Part 155.7(d) requires that any release of airport land for sale or disposal shall be subject to a written commitment of the airport sponsor to receive a fair market value for the property.  FAA shall not issue a release without this commitment.  Part 155 can be found in Appendix K of this Order.

**(1).** The net proceeds realized from the sale of surplus property – or the equivalent amount if the property is not sold – must be placed in an identifiable interest bearing account to be used for the purposes listed in (2) below.

**(2).** The proceeds of sale must be used for one or more of the following purposes as agreed to by FAA and reflected in the supporting documentation for the deed of release:

**(a).** Eligible items of airport development set forth in the current airport grant program and reflected in the airport's capital improvement program (CIP).

**(b).** Any aeronautical items of airport development not eligible under the grant program.

**(c).** Retirement of airport bonds that are secured by pledges of airport revenue, including repayment of loans from other federal agencies.

**(d).** Development of common use facilities, utilities, and other improvements on dedicated revenue production property that clearly enhances the revenue production capabilities of the property.

**(3).** All aeronautical improvements funded by the proceeds of sale will be accomplished in accordance with current applicable FAA design criteria or such state standards as have been approved by the FAA.

**Federal Aviation Regulations**

**PART 155**

Release of Airport Property
from Surplus Property Disposal Restrictions

*Published December 1974*

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION



*Title 14 CFR Part 155.7(d) requires that any release of airport land for sale or disposal shall be subject to a written commitment of the airport owner to receive a fair market value for the property.*

**(4).** Any interest earned by the account holding the proceeds of sale may be used for the operating and maintenance of the aeronautical portion of the airport or to enhance the revenue producing capability of the aeronautical activities at the airport.

**22.18. Release of Federal Obligations in Regard to Real Property Acquired with Federal Grant Assistance.**

The FAA grants funds for the purchase of real property for aeronautical use. Over time, however, such acquisitions may result in parcels that are no longer needed for aeronautical use. A sponsor may then (a) be released by FAA from the responsibility to maintain a grant-acquired parcel for its originally intended aeronautical use (making it available for nonaeronautical use to generate airport revenue), (b) be released by FAA to use the parcel for a concurrent or interim nonaeronautical use to generate airport revenue, or (c) be released by FAA to dispose of the parcel at fair market value.

Also, grant-acquired real property can be exchanged for other property not held by the sponsor but that serves an airport purpose more effectively than the originally acquired parcel. However, a grant land swap cannot result in a net loss in the value of the federal interest in the grant land.

Federal obligations of the grant land should be formally released and transferred to the new parcel.

**22.19. Effect of not Receiving or Receiving a Grant after December 30, 1987.**

**a. Not Receiving a Grant after December 30, 1987.**

**(1). Applicability.** This paragraph is applicable to any request for release for sale or disposal of any airport land acquired with funds from the Federal Aid to Airports Program (FAAP), the Airport Development Aid Program (ADAP), or the Airport Improvement Program (AIP) and where the sponsor has not received additional grants after December 30, 1987. A sponsor's request must assure that the federal government shall be reimbursed or the federal share of the net proceeds will be reinvested (a) in the airport, (b) in a replacement airport, or (c) in another operating public airport.

**(2). Reimbursement**. The requirement for reimbursement shall apply only where there is no alternative to invest in a replacement or operating public airport owned or to be owned by the sponsor. However, the sponsor may elect to reinvest the federal share of the net proceeds in any other grant-obligated public airport by contract between the respective airport owners with FAA concurrence. FAA concurrence in such a contract is contingent upon such funds being used for grant-eligible airport development. Except where the grant agreement specifically provides otherwise (by special condition), the amount to be reimbursed shall be the amount of the federal share of the grant times the net proceeds from sale of the property at its current fair market value.

**(3). Reinvestment.** Reinvestment of the total net proceeds (both federal and sponsor share) is required if the sponsor continues to own or control – or will own or control – a public airport or a replacement public airport. Reinvestment shall be accomplished within five (5) years (or a timeframe satisfactory to the FAA Administrator) for specified items of airport improvement in the order of priority established for releases of surplus airport property in paragraph 22.17.e above.

Unlike surplus property, the purposes for which land was acquired under FAAP/ADAP/AIP did not include nonaeronautical income production. If reinvestment cannot be accomplished within five (5) years or if the net proceeds derived exceed the cost of grant-eligible airport development, reimbursement of the remaining share will be required.

**b. Receiving a Grant after December 30, 1987.**

**(1). Land for Airport Purposes (Other than Noise Compatibility Purposes).** A sponsor entering into a grant after December 30, 1987, under the Airport and Airway Improvement Act of 1982 (AAIA), as amended by the Airport and Airway Safety and Capacity Expansion Act of 1987 (1987 Airport Act), is to dispose of land at fair market value when the land is no longer needed for airport purposes. This also applies to land purchased under FAAP/ADAP/AIP after December 30, 1987. The federal share of the sale proceeds of the land is to be deposited into the Trust Fund. The sponsor will retain or reserve an interest in the land to ensure it will be used only for purposes compatible with the airport.

**(2). Land for Noise Compatibility Purposes.** A sponsor entering into a grant after December 30, 1987, under the AAIA, as amended by the 1987 Airport Act, will dispose of noise land at fair market value when the land is no longer needed for noise compatibility purposes. This also applies to land purchased under FAAP/ADAP/AIP. An interest or right shall be reserved in the land to ensure it will be used only for purposes that are compatible with the noise levels generated by aircraft. The portion of the disposal proceeds that represent the federal government's share is to be reinvested in another approved noise compatibility project, reinvested in an approved airport development project or deposited into the Trust Fund. Disposal of noise land



*For a request to release an entire airport that is to be replaced by another new or existing airport, the general policy is to treat the proposal as a trade-in of the land and facilities developed with federal aid at the old airport toward the acquisition and development of better facilities at the new airport. (Photo: FAA)*

may be by sale, long-term lease, or exchange. (See Program Guidance Letter (PGL) 08-2, Management of Acquired Noise Land: Inventory – Reuse – Disposal, dated February 8, 2008, updated March 26, 2009 (available on the FAA web site).

## 22.20. Release of Entire Airport.

**a. Approval Authority.** The FAA Associate Administrator for Airports (ARP-1) is the FAA approving official for a sponsor's request to be released from its federal obligations for the purpose of abandoning or disposing of an entire airport before disposal can occur. That authority is not delegated. A copy of the sponsor's request, including related exhibits and documents, and a copy of the FAA Airports regional statement supporting and justifying the proposed action shall be provided to ARP-1.

**b. Replacement Airport.** In the instance of a disposal of an entire airport that is to be replaced by a new or replacement airport, the general policy is to treat the proposal as a trade-in of the land and facilities developed with federal aid at the old airport for the acquisition and development of better facilities at a new or replacement airport.

Release under these circumstances is contingent upon transferring federal grant obligations to the new or replacement airport. The release would become effective upon the transfer of the federal grant obligations to the new airport, when the new airport becomes operational. Development costs for the new airport in excess of the value from the disposal of the old airport would be eligible for AIP assistance. In these circumstances, the availability of a new and better airport is the basis for determining that the old one is no longer needed and that its useful life has expired. The original grant agreement is then terminated with the transfer of the grant obligations. (See Appendix T of this Order, *Sample FAA Letter on Replacement Airport*, regarding replacement airport.)

**22.21. Procedures for the Application, Consideration, and Resolution of Release Requests.** The ADO or regional airports division will base its decision to release, modify, reform, or amend an airport agreement on the procedures and guidelines outlined in this chapter and on the specific factors pertinent to the type of agreement and the release requested.

**22.22 General Documentation Procedures.** The sponsor's proposed release, modification, reformation, or amendment is a material alteration of its contractual relationship with the FAA. If approved, the results may have a substantial impact on the service that the sponsor provides to the aeronautical public. Accordingly, the ADOs and regional airports divisions must fully document all such actions to include the following:

**a.** A complete description of the airport sponsor's federal obligations, including grant history, surplus property received, reference to appropriate planning documents (Exhibit "A" or ALP) with notations on additional land holdings and land use.

**b.** A complete description of all terms, conditions, and federal obligations that may need to be modified in order to achieve the result requested by the sponsor.

**c.** The sponsor's justification for release, modification, reformation, or amendment.

**d.** The ADO or regional office's determination for public notice and comment or documentation of the notice and a summary of comments received.

**e.** The ADO or regional office's preliminary determination on the request.

**f.** The endorsement of the FAA official authorized to grant the request.

**22.23. Airport Sponsor Request for Release.** The sponsor must submit its request for release, modification, reformation, or amendment in writing signed by a duly authorized official of the sponsor. Normally, the sponsor submits an original request and supporting material to the ADO or regional airports division. If the FAA or other federal agencies require it, the sponsor may need to submit additional copies of the request and supporting material to headquarters offices or to the offices of other federal agencies.

**22.24. Content of Written Requests for Release.** Although no special format is required, the sponsor must make its request specific and indicate, as applicable, the following:

**a.** All obligating agreement(s) with the United States.

**b.** The type of release or modification requested.

**c.** Reasons for requesting the release, modification, reformation or amendment.

**d.** The expected use or disposition of the property or facilities.

**e.** The facts and circumstances that justify the request.

**f.** The requirements of state or local law, which the ADO or regional office will include in the language of the approval document if it consents to, or grants, the request.

**g.** The involved property or facilities.

**h.** A description of how the sponsor acquired or obtained the property.

**i.** The present condition and present use of any property or facilities involved.

**22.25. Content of Request for Written Release for Disposal.**  In addition to the above, the sponsor must include the following in its request for release involving disposal of capital items:

**a.** The fair market value of the property.

**b.**  Proceeds expected from the disposal of the property and the expected use of the revenues derived.

**c.**  A comparison of the relative advantage or benefit to the airport from the sale of the property as opposed to retention for rental income.

**d.**  Provision for reimbursing the airport account for the fair market value of the property if the property is not going to be sold upon release, for example, if the municipality intends to use it for a new city office building or sports complex.

**e.**  A description of any intangible benefits the airport will realize from the release.  The sponsor may submit a plan substantiating a claim of intangible benefits to the airport accruing from the release, the amount attributed to the intangible benefits, and the merit of applying the intangible benefits as an offset against the fair market value of the property to be released.

NOTE:  Only benefits to the airport may be cited as justification for the release, whether tangible or intangible.  The nonaviation interest of the sponsor or the local community – such as making land available for economic development – does not constitute an airport benefit that can be considered in justifying a release and disposal.

09/30/2009                                                                                      5190.6B

*__The nonaviation interest of the sponsor or the local community does not constitute an airport benefit that can be considered in justifying a release and disposal.__*



**22.26. Exhibits to the Written Request for Release.**

**a. Drawings.** The sponsor must attach to each copy of the request scaled drawings showing all airport property and airport facilities that are currently federally obligated by agreements with the United States. The sponsor should attach other exhibits supporting or justifying the request, such as maps, photographs, plans, and appraisal reports, as appropriate.

Although desirable, the FAA does not require scaled ALP drawings to support a request for release. If the FAA grants the release, the drawing serves to explain or depict the effect on the airport graphically. The drawings do not serve as the document by which the release is granted, and unless a release has been executed in accordance with the

*The reasonableness and practicality of the sponsor's request for release of airport property is related to the necessary aeronautical facilities and the priority of the need. In addition, the evaluation should consider the net benefit to be derived by civil aviation and the compatibility of the proposal with the needs of civil aviation, including the balance of benefits to all users as well as to the public at large. For example, as shown in the photograph above, a request for release of the property where aircraft are parked or where a hangar is located would be denied because the property is serving an aeronautical function. On the other hand, in a case such as the one depicted below, where airport property is separated by a road, the FAA may concur in releasing the property in question for revenue-producing nonaeronautical use provided it generates fair market value for the airport, is not needed for any aeronautical function, and its use is compatible with airport operations. (Photos: FAA)*



guidance contained in this chapter, the FAA will not approve any drawing inconsistent with the sponsor's current federal obligations.

**b. Height and Data Computations.**  If the release contemplates change of use or disposal, the sponsor must provide height limit computations to limit the height of fixed objects to ensure navigation and compatible land use.  It is essential to prevent an incompatible obstruction to air navigation from being located near the airport on property the airport once owned.

**c. Application of Sale Proceeds.**  If the release action requested would permit a sale or disposal of airport property, the sponsor should provide documentation about the intended use of proceeds and evidence that the proceeds from disposal represent fair market value.

**22.27. FAA Evaluation of Sponsor Requests.**  When the ADOs or regional airports divisions receive a request supported by the appropriate documentation and exhibits, they need to evaluate the total impact of the sponsor's proposal on the airport and the sponsor's federal obligations. This evaluation includes consideration of pertinent factors such as:

**a.** All of the ways in which the sponsor is federally obligated, both in its operations and its property.  This includes specific federal agreements and use obligations.

**b.** The sponsor's past and present compliance record under all its airport agreements and its actions to make available a safe and usable airport for aeronautical use by the public.  If there has been noncompliance, evidence that the sponsor has taken or agreed to take appropriate corrective action.

**c.** The reasonableness and practicality of the sponsor's request in light of maintaining necessary aeronautical facilities and the priority of the airport in the National Plan of Integrated Airport Systems (NPIAS).

**d.** The net benefit to be derived by civil aviation and the compatibility of the proposal with the needs of civil aviation, including the balance of benefits to aeronautical users relative to the public at large.

**e.** Consistency with the guidelines for specific types of releases, as discussed in this chapter.

**22.28. FAA Determination on Sponsor Requests.**  The FAA will not release more property than the sponsor has requested.  The statutes, regulations, and policy applicable to the specific types of agreements involved must guide the decision to grant or deny the request based on the evaluation factors.  In addition, the FAA must determine if FAA Order 5050.4B *National Environmental Policy Act (NEPA) Implementing Instructions for Airport Projects*, requires an environmental review procedure.  Further, it must be determined if one of the following conditions exists:

**a.** The public purpose for which an agreement or a term, condition, or covenant of an agreement was intended to serve is no longer applicable.  The FAA should not construe the omission of an

airport from the NPIAS as a determination that such an airport has ceased to be needed for present or future airport purposes.

**b.** The release, modification, reformation, or amendment of an applicable agreement will not prevent accomplishment of the public purposes for which the airport or its facilities were federally obligated, and such action is necessary to protect or advance the interest of the United States in civil aviation.

**c.** The release, modification, reformation, or amendment will federally obligate the sponsor under new terms, conditions, covenants, reservations, or restrictions determined necessary in the public interest and to advance the interests of the United States in civil aviation (such as compatible land use for land that is disposed of).

**d.** The release, modification, reformation, or amendment will conform the rights and federal obligations of the sponsor to the statutes of the United States and the intent of the Congress, consistent with applicable law.

**22.29. FAA Completion of Action on Sponsor Requests.**  The ADO or regional airports division will advise the sponsor that its request is granted or denied.  It will also indicate if special conditions, qualifications, or restrictions apply to the approval.  The approving FAA office may issue a letter of intent to approve the request in advance of the actual release, at the request of the sponsor.[51]  (See also section 22.32 of this chapter, *FAA Consent by Letter of Intent to Release – Basis for Use*.)

**a. FAA Approval Action.**  If FAA approves the request or an acceptable modification of the request, the ADO or regional airports division will prepare the necessary instruments or documents.  The ADO or regional airports division will initiate parallel action to amend all related FAA documents (i.e., NPIAS, ALP, Exhibit "A," and FAA Form 5010, *Airport Master Record*) as required to achieve consistency with the release.  The sponsor must thereafter provide the ADO or regional airports division with any acknowledgment or copies of executed instruments or documents as required for FAA record purposes.

**b. Content of Release Document.**  The formal release will cite the agreements affected and identify specific areas or facilities involved.  The ADO or regional airports division will notify the sponsor of the binding effect of the revised federal obligations.

**22.30. FAA Denial of Release or Modification.**  When the ADO or regional airports division determines that the request is contrary to the public interest and therefore cannot grant the request, it will advise the airport sponsor in writing of the denial.

---

[51] All such letters of intent should cite any specific understandings reached by the ADO and airport sponsor.

09/30/2009                                                                                           5190.6B

**22.31. Procedures for Public Notice for a Change in Use of Aeronautical Property.**

**a. Summary.**  This section sets forth FAA guidance for public notice of the agency's intent to
release aeronautical property or facilities from federal obligations under the grant assurances and
surplus property agreements.

Section 125 of *The Wendell H. Ford Aviation Investment and Reform Act for the 21st Century*
(AIR-21) requires the FAA to provide an opportunity for public notice and comment prior to the
"waiver" or "modification" of a sponsor's federal obligation to use certain airport land for
nonaeronautical purposes.

**b. Responsibilities.**  The ADOs or regional airports divisions are responsible for complying with
the requirements of the statute and policy guidance governing the notice and release of
aeronautical property.

**c. Authority.**   Section 125 of AIR-21 has been codified as amendments to 49 U.S.C.
§§ 47107(h), 47125, 47151, and 47153.

See a sample *Notification Memo for Federal Register Notice Governing the Notification and
Release of Aeronautical Property* and a *Sample Federal Register Notice Governing the
Notification and Release of Aeronautical Property* at the end of this chapter.

**d**. **Scope and Applicability.**   As a matter of policy, the FAA will provide public notice of a
proposed release of a sponsor from its federal obligations regarding any land, facilities, and
improvements used or depicted on an ALP for aeronautical use where the release would affect
the aeronautical use of the property, including certain releases for which notice is not expressly
required by section 125 of AIR-21.  Public notice requirements apply to release of the following
types of property:

**(1).**  Land acquired for an aeronautical purpose (except noise compatibility) with federal
assistance in accordance with 49 U.S.C. § 47107(c)(2)(B).

**(2).**  Land (surplus property) provided for aeronautical purpose in accordance with 49 U.S.C.
§ 47151.

**(3).**  Land conveyances of the United States Government for aeronautical purposes in accordance
with 49 U.S.C. § 47125.

**(4).**  Land used as an aircraft movement area with federally financed airport improvements.

**e. Purpose.**  Airport property becomes federally obligated for airport purposes when an airport
sponsor receives federal financial assistance.  The FAA land release procedures evaluate the
sponsor's request for release of land to the extent that such action will protect, advance, or
benefit the public interest in civil aviation or, specifically, the public's investment in the national
airport system.  Section 125 of AIR-21 requires the FAA to solicit and consider public comment
as a part of the agency's decision making on a sponsor's request for release.

**f.  Procedures.** At least 30 days prior to the agency's determination of an airport sponsor's request to release aeronautical property or facilities, notice must be published in the *Federal Register* to afford the public an opportunity to comment.  Public notice is also an opportunity for the FAA to obtain additional information as a part of its evaluation of the airport sponsor's request.  It allows the FAA to take public comment into account in the agency's decision making.  Public notice is not required for:

**(1).** Approval of the interim use of airport property on a short-term period, generally not exceeding five (5) years;

**(2).** Grant of utility or other types of easements that will have no adverse effect on the aeronautical use of the airport;

**(3).** Release of aeronautical property as a part of a major environmental action in which public notice and comment is an integral part of the environment review; or

**(4).** Release of noise compatibility land.

## 22.32. FAA Consent by Letter of Intent to Release – Basis for Use.

**a. Use of Letter of Intent.**  Release and disposal of facilities developed through federal assistance is often necessary to finance replacement facilities.  The sponsor may, therefore, request a letter of intent to release even if it is merely to permit the sponsor to determine the market demand for portions of the available airport property proposed for release and disposal.

**b. Letter of Intent Contingencies.**  The ADO or regional airports division may issue such a letter of intent to release if the letter contains appropriate conditions and makes clear that actual release is specifically contingent upon adequate replacement facilities being developed and becoming operable and available for use.

**c. Binding Commitment.**  The letter represents a binding commitment (subject to future appropriations) and an advance decision to release the property once specific conditions have been met.  It should be used only when all of the required conditions pertinent to the type of release sought have been met or are specifically made a condition of the pledge contained in the letter of intent.  In addition, such a letter should cite any specific understandings reached regarding anticipated problems in achieving the substitution of airport properties (i.e., who pays for relocation of various facilities and equipment and the cost of extinguishing existing leases).  The letter should specify a reasonable time limit on the commitment to release.  The sample *Letter of Intent to Release Airport Property* at the end of this chapter will assist in drafting such a letter.

## 22.33. The Environmental Implications of Releases.

**a.** When a sponsor accepts a federal airport development grant or a conveyance of federal surplus property for airport purposes, the sponsor incurs specific federal obligations with respect to the uses of the property.  FAA action is required to release a sponsor from federal obligations in the

09/30/2009                                                                    5190.6B

event the sponsor desires to sell the airport land.  This action is normally categorically excluded, but may require an environmental assessment in accordance with the provisions of chapter 3, "Environmental Action Choices," of FAA Order 5050.4B *National Environmental Policy Act (NEPA) Implementing Instructions for Airport Projects*.

In this case, the assessment shall address the known and immediately foreseeable environmental consequences of the release action.  As with other federal actions regarding land, appropriate coordination with federal, state, or local agencies shall be completed for applicable areas of environmental consideration (i.e., historic and archeological site considerations, section 4(f) lands, wetlands, coastal zones, and endangered species).[52]   In such cases, coordination with the State Historic Preservation Officer is required.

**b.** In making the final determination, the responsible federal official shall consider the effects of covenants that will encumber the title and the extent of federal ability to enforce these covenants subsequent to the release action.  The standard conditions of release relative to the right of flight, including the right to make noise from such activity and the prohibition against erection of obstructions or other actions that would interfere with the flight of aircraft over the land released, may be considered as mitigating factors and may be included in environmental assessments when required.  When the intended use of released land is consistent with uses described and covered in a prior environmental assessment, the prior data and analysis may be used as input to the present assessment.  When the conditions set forth in the applicable sections of FAA Order 5050.4B *National Environmental Policy Act (NEPA) Implementing Instructions for Airport Projects*, apply, a written reevaluation may be used to support the property release.

**c.** In some cases, another federal agency may be the lead agency responsible for preparing an environmental assessment and environmental impact statement, if required.   In these circumstances, the FAA may be a cooperating agency.  To support the release action, the FAA may then adopt the environmental document prepared by the other agency in accordance with the provisions of Council of Environmental Quality (CEQ) 1506.3.

**d.** Long term leases that are not related to aeronautical activities or airport support services have the effect of a release for all practical purposes, and shall be treated the same as a release.  Such leases include convenience concessions serving the public such as hotel, ground transportation, food and personal services, and leases that require the FAA's consent for the conversion of aeronautical airport property to revenue-producing nonaeronautical property.  Long-term leases are normally those exceeding 25 years.

**22.34. through 22.37. reserved.**

---

[52] See FAA Order 5050.4A, *Airport Environmental Handbook*, for additional information.