**Plaintiff's Exhibit A**



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

National Policy



**ORDER
5190.6B
Change 2**

Effective Date:
December 9, 2022

**SUBJ**: Airport Compliance Manual

## 1. Purpose

The Airport Compliance Manual provides guidance to FAA employees on the implementation of the FAA's airport compliance program.  Under the program, the FAA has the responsibility to assure airport sponsors comply with certain obligations that arise from FAA grant agreements and from deeds of property conveyance for airport use.

## 2. Distribution

The Airport Compliance Manual is located on the FAA Office of Airports website where it is available to all interested parties. See:
https://www.faa.gov/airports/resources/publications/orders/compliance_5190_6/

## 3. Cancellation

This Order cancels and replaces the following chapters of the Airport Compliance Manual:

>             Chapter 2, Compliance Program
>             Chapter 3, Federal Obligations from Property Conveyances
>             Chapter 4, Federal Grant Obligations and Responsibilities
>             Chapter 5, Complaint Resolution

## 4. Explanation of Changes

Since 2009, there have been changes to the laws and policies relating to the Federal obligations of airport sponsors and revisions to the procedures for investigating and resolving complaints that allege noncompliance. To incorporate any changes and provide the most useful and current program guidance to FAA employees, the Office of Airport Compliance and Management Analysis is undertaking a review of the Order and will publish updates as the chapter reviews are completed.

On December 3, 2021, the Office of Airport Compliance and Management Analysis issued Change 1 to the Airport Compliance Manual.  This Change 2 to the Airport Compliance Manual is issued to address the following:

- After review of public comments offered on the 2009 update, and subsequent experience with using Order 5190.6B as guidance for the airport compliance program, and issuance of Change 1 to the Order, the FAA is now updating Chapters 2, 3, 4 and 5 of the Order.
- Changes included are editorial, based on suggestions in the public comments or recommendations from FAA staff for more effective ways of expressing policy guidance. In applicable sections of the Order, the revised chapters:

11/22/2021                                                                                    5190.6B Change 2

### Part I: Background

### Chapter 1: Scope and Authority

### Updated November 2021

**1.1. Purpose.** This Order sets forth policies and procedures for the FAA Airport Compliance Program. The Order is not regulatory and is not controlling with regard to airport sponsor conduct; rather, it establishes the policies and procedures for FAA personnel to follow in carrying out the FAA's responsibilities for ensuring airport compliance. It provides basic guidance for FAA personnel in interpreting and administering the various continuing commitments airport owners make to the United States as a condition for the grant of federal funds or the conveyance of federal property for airport purposes. The Order, *inter alia,* analyzes the various obligations set forth in the standard airport sponsor assurances, addresses the application of the assurances in the operation of public-use airports, and facilitates interpretation of the assurances by FAA personnel.

**1.2. Audience.** FAA personnel having responsibility for monitoring airport sponsor compliance with the sponsor's federal obligations.

**1.3. Where Can I Find This Order?** The current Order is available on the FAA website and will be updated electronically at this location.

**1.4. Cancellation.** This Order cancels and replaces the following chapters of FAA Order 5190.6B, dated September 30, 2009: Chapter 1, Scope and Authority; Chapter 9, Unjust Discrimination Between Aeronautical Users; Chapter 10, Reasonable Commercial Minimum Standards; Chapter 11, Self-Service and Chapter 23, Reversions of Airport Property.

**1.5. Introduction.** This chapter discusses the scope of the Order, the sources of sponsor[1] federal obligations, and the FAA's authority to administer the Airport Compliance Program within the FAA Office of Airports (ARP). The FAA Airport Compliance Program is contractually based, and it does not attempt to control or direct the operation of airports. Rather, the program is designed to monitor and enforce obligations agreed to by airport sponsors in exchange for valuable benefits and rights granted by the United States in return for substantial direct grants of funds and for conveyances of federal property for airport purposes. The Airport Compliance Program is designed to protect the public interest in civil aviation. Grants and property conveyances are made in exchange for binding commitments (federal obligations) designed to ensure that the public interest in civil aviation will be served. The FAA bears the important responsibility of seeing that these commitments are met. This Order addresses the types of these commitments, how they apply to airports, and what FAA personnel are required to do to ensure compliance with Federal obligations.

**1.6. Scope.** This Order provides guidance, policy, and procedures for conducting a comprehensive and effective FAA Airport Compliance Program to monitor and ensure airport sponsor compliance with the applicable federal obligations assumed in the acceptance of airport

---

[1] A sponsor is any public agency that applies for federal financial assistance, or private owner of a public use airport, as defined in the Airport and Airway Improvement Act of 1982 (AAIA), codified at 49 U.S.C. § 47102(26).

11/22/2021                                                                                    5190.6B Change 2

development assistance.

***Grants and property conveyances are made in exchange for binding commitments (federal obligations) designed to ensure the public interest in civil aviation will be served.***



*The Federal Aviation Act of 1958 (FAA Act) transferred the Civil Aeronautics Administration's (CAA) functions to a new independent body, the Federal Aviation Agency, which had broader authority to address aviation safety. The FAA Act took safety rulemaking from the Civil Aeronautics Board (CAB) and entrusted it to the new Federal Aviation Agency. It also gave the Federal Aviation Agency sole responsibility for developing and maintaining a common civil-military system of air navigation and air traffic control. Seen here, Edward R. Quesada, the first Administrator of the Federal Aviation Agency, is sworn in by Chief Justice Earl Warren and President Dwight Eisenhower. (Photo: FAA)*

**1.7. Background.** The Air Commerce Act of 1926 was the cornerstone of the federal government's regulation of civil aviation. This landmark legislation was passed at the urging of the aviation industry, whose leaders believed that aviation could not reach its full commercial potential without federal action to improve and maintain safety standards. The Air Commerce Act charged the Secretary of Commerce with fostering air commerce, issuing and enforcing air traffic rules, licensing pilots, certificating aircraft, establishing airways, and operating and maintaining aids to air navigation. A new Aeronautics Branch of the Department of Commerce assumed primary responsibility for aviation oversight.

In 1938, the Civil Aeronautics Act transferred the federal civil aviation responsibilities from the Commerce Department to a new independent agency, the Civil Aeronautics Authority. The legislation also expanded the government's role by giving the Civil Aeronautics Authority the power to regulate airline fares and to determine the routes that air carriers would serve. In 1940, President Franklin Roosevelt split the Civil Aeronautics Authority into two agencies, the Civil Aeronautics Administration (CAA) and the Civil Aeronautics Board (CAB). The CAA was responsible for air traffic control (ATC), airman and aircraft certification, safety enforcement, and airway development. The CAB was entrusted with safety rulemaking, accident investigation, and economic regulation of the airlines. Both organizations were part of the Department of Commerce. Unlike the CAA, however, the CAB functioned independent of the Secretary of Commerce. On the eve of America's entry into World War II, the CAA began to extend its ATC responsibilities to takeoff and landing operations at airports. This expanded role eventually became permanent after the war. The application of radar to ATC helped controllers keep abreast of the postwar boom in commercial air transportation.

In the Federal Airport Act of 1946 (1946 Airport Act), Congress gave the CAA the added task of administering the Federal Aid to Airports Program (FAAP), the first peacetime program of financial assistance aimed exclusively at promoting development of the nation's civil airports.

11/22/2021                                                                          5190.6B Change 2

The approaching introduction of jet airliners and a series of midair collisions spurred passage of the Federal Aviation Act of 1958 (FA Act). This legislation transferred the CAA's functions to a new independent agency, the Federal Aviation Agency, which had broader authority to address aviation safety through rulemaking and enforcement. It also gave the Federal Aviation Agency sole responsibility for developing and maintaining a common civil-military system of air navigation and air traffic control, a responsibility the CAA had shared with others.

In 1966, Congress authorized the creation of a cabinet department that would combine federal transportation responsibilities for all public modes of transportation. This new Department of Transportation (DOT) began full operations on April l, 1967. On that day, the Federal Aviation Agency became one of several modal administrations within the DOT and received a new name, the Federal Aviation Administration (FAA). At the same time, the CAB's accident investigation function was transferred to the new National Transportation Safety Board (NTSB).

The FAA has gradually assumed responsibilities not originally contemplated by the FA Act. For example, the hijacking epidemic of the 1960s brought the agency into the field of aviation security. That function was later transferred to the Transportation Security Administration (TSA) in 2001 after the events of 9/11. In 1968, Congress vested in the FAA Administrator the power to prescribe aircraft noise standards. The Airport and Airway Development Act of 1970 (1970 Airport Act) placed the agency in charge of a new airport aid program funded by a special aviation trust fund. The 1970 Airport Act also made the FAA responsible for safety certification of airports served by air carriers. In 1982, Congress enacted the current grant statute, the Airport and Airway Improvement Act (AAIA), which established the Airport Improvement Program (AIP). The FAA's mission expanded again in 1995 with the transfer of the Office of Commercial Space Transportation from the Office of the Secretary to the FAA.

11/22/2021                                                                                5190.6B Change 2



**NPIAS Airports by Category and Role (2021-2025)**

The table shown above depicts the extent of the country's public-use airport system. The NPIAS reports are available online at https://www.faa.gov/airports/planning_capacity/npias/current/. (Graphics: FAA)

The airport system envisioned in the first National Airport Plan, issued in 1946, has been developed and nurtured by close cooperation between federal, state, and local agencies. The general principles guiding federal involvement[2] have remained largely unchanged for the National Plan of Integrated Airport Systems (NPIAS). The airport system should have the following attributes to meet the demand for air transportation:

- Airports should be safe and efficient, located at optimum sites, and be developed and maintained to appropriate standards.

- Airports should be operated efficiently both for aeronautical users and the government, relying primarily on user fees and placing minimal burden on the general revenues of the local, state, and federal governments.

- Airports should be flexible and expandable, able to meet increased demand and accommodate new aircraft types.

- Airports should be permanent, with assurance that they will remain open for aeronautical use over the long term.

---

[2] Extracted from the Report to Congress, National Plan of Integrated Airport Systems (NPIAS)  (2009-2013).

11/22/2021                                                                                                5190.6B Change 2

- Airports should be compatible with surrounding communities, maintaining a balance between the needs of aviation and the requirements of residents in neighboring areas.

- Airports should be developed in concert with improvements to the air traffic control system.

- The airport system should support national objectives for defense, emergency readiness, and postal delivery.

- The airport system should be extensive, providing as many people as possible with convenient access to air transportation, typically not more than 20 miles of travel to the nearest NPIAS airport.

- The airport system should help air transportation contribute to a productive national economy and international competitiveness.

### *Airports should be permanent with assurance that they will remain open for aeronautical use over the long term.*

In addition to these principles specific to airport development, a guiding principle for federal infrastructure investment, as stated in Executive Order 12893, *Principles for Federal Infrastructure Investments* (January 26, 1994), is that such investments must be cost beneficial, *i.e*., must have a positive ratio of benefits to costs. The FAA implements these principles using program guidance to ensure the effective use of federal aid.

A national priority system guides the distribution of funds. Information used to establish the priority is supplemented by specific requirements for some additional analysis or justification. For example, in certain cases the airport sponsor must prepare a benefit-cost analysis for airport capacity development projects to be funded under the Airport Improvement Program (AIP).

**1.8. Compliance Program Background.** The Civil Aeronautics Act of 1938, as amended, and the FA Act, as amended, charge the FAA Administrator with broad responsibilities for the regulation of air commerce in the interests of safety and national defense and for the development of civil aeronautics. Under these broad powers, the FAA was tasked with regulation of airmen, aircraft, navigable airspace, and airport operations. The federal interest in advancing civil aviation has been augmented by various legislative actions that authorize programs for granting property, funds, and other assistance to local communities to develop airport facilities.

In each program, the airport sponsor assumes certain federal obligations, either by contract or by restrictive covenants in property deeds, to maintain and operate its airport facilities safely and efficiently and in accordance with specified conditions. Commitments assumed by airport sponsors in deeds or grant agreements have been generally successful in maintaining a high degree of safety and efficiency in airport design, construction, operation, and maintenance. The FAA Airport Compliance Program establishes the policy and guidelines for monitoring the compliance of airport sponsors with their obligations to the United States and for ensuring that airports serve the needs of civil aviation.

11/22/2021                                                                5190.6B Change 2

## *The federal obligations a sponsor assumes in accepting FAA administered airport development assistance are mandated by federal statute.*

**1.9. Sources of Airport Sponsor Federal Obligations.** The federal obligations a sponsor assumes in accepting FAA-administered airport development assistance are mandated by federal statute and incorporated in the grant agreements and property conveyance instruments entered into by the sponsor and the United States Government, including:

**a.** Grant agreements issued under the various FAA-administered airport development grant programs through the years. These include, but are not limited to, the Federal Aid to Airports Program (FAAP), the Airport Development Aid Program (ADAP), and the Airport Improvement Program (AIP) under 49 U.S.C. § 47101, et seq. This statutory provision provides for federal airport financial assistance for the development of public use airports under the AIP established by the AAIA. Section 47107 sets forth assurances that FAA must include in every grant agreement as the sponsor's conditions for receiving federal financial assistance. (The current version of 49 U.S.C. § 47107 can be found online.) Pursuant to and consistent with, 49 U.S.C. § 47107(g) and (h), the FAA has prescribed some additional assurances or requirements for sponsors beyond those specifically enumerated in 49 U.S.C. § 47107.  These include requirements set forth in 49 U.S.C. § 47106 and other statutes.

Occasionally, there are special funding programs authorized by Congress to provide federal grants to airports for a specific purpose such as economic development or recovery (*e.g.*, American Recovery and Reinvestment Act of 2009 (ARRA); Coronavirus Aid, Relief, and Economic Security Act (CARES), *etc.*).  The grant agreements under these programs set forth the conditions for receiving the federal assistance and will vary depending on the purpose of the grant.

Upon acceptance of an AIP grant, the assurances become a binding contractual obligation between the airport sponsor and the federal government.

11/22/2021                                                                   5190.6B Change 2

**b.** Instruments of surplus property transfer issued under the provisions of section 13(g) of the Surplus Property Act of 1944, as amended, 49 U.S.C. §§ 47151-47153.

**c.** Instruments of nonsurplus conveyance issued under section 16 of the 1946 Airport Act, as amended; under section 23 of the 1970 Airport Act, as amended; or under section 516 of the AAIA, as amended, codified at 49 U.S.C. § 47125.

**d.** Exclusive Rights under section 303 of the Civil Aeronautics Act of 1938, as amended, and section 308(a) of the FAA Act, as amended, codified at 49 U.S.C. § 40103(e).



*The FAA is also charged with responsibility for monitoring and enforcing compliance of federally obligated sponsors with the provisions prohibiting exclusive rights set forth in section 303 of the Civil Aeronautics Act of 1938, as amended, and in section 308(a) of the FAA Act, as amended. The exclusive rights prohibition was designed to ensure that airports maintain public access and availability to all aeronautical users at airports funded with federal assistance. This applies to all commercial and noncommercial aeronautical users alike, from private aircraft operators (i.e., general aviation) to airlines and all aeronautical ground services. (Photos: FAA)*

**e.** Title VI of the Civil Rights Act of 1964, as amended.

**1.10. FAA Authority to Administer the Compliance Program.** Responsibility for monitoring and ensuring airport sponsor compliance with applicable federal obligations is vested in the Secretary of Transportation by statute and delegated to the FAA under 49 CFR § 1.83:



**a. Surplus Property Transfers.** Surplus property instruments of transfer were issued by the War Assets Administration (WAA) and are now issued by its successor, the General Services Administration (GSA). However, section 3 of Public Law (Pub. L.) 81-311 specifically vests the FAA with the sole responsibility for determining and enforcing compliance with the terms and conditions of all instruments of transfer by which surplus airport property is, or has been, conveyed to nonfederal public agencies pursuant to the Surplus Property Act of 1944, as amended.

**b. Nonsurplus Property Transfers.** Nonsurplus property transfers are conveyances under section 16 of the 1946 Airport Act, under section 23 of the 1970 Airport Act, or under section 516 of the AAIA, codified at 49 U.S.C. § 47125. These are also referred to as nonsurplus

11/22/2021                                                                                              5190.6B Change 2

property conveyances.  Instruments of property conveyance issued under these sections are also issued by agencies other than the FAA. The conveyance instrument, deed, or quitclaim document assigns monitoring and enforcement responsibility to the FAA.

**c. Grant agreements from the FAAP, ADAP, and the AIP programs (*e.g*., ARRA, CARES, etc.).**  The FAA is vested with jurisdiction over monitoring and enforcing grant agreements that the FAA and its predecessor, the CAA, executed on behalf of the United States.

**d. Exclusive Rights Prohibition.**  The FAA is also charged with responsibility for monitoring and enforcing compliance with the provisions prohibiting exclusive rights set forth in section 303 of the Civil Aeronautics Act of 1938, as amended, and in section 308(a) of the FAA Act, as amended, codified at 49 U.S.C. § 40103(e).

**e. Amendment, Modification, or Release of Airport Sponsor Federal Obligations.**  The authority of the FAA to release or modify the terms and conditions of airport sponsor grant agreements varies based on the respective types of agreements. Pub. L. 81-311 prescribes specific circumstances and conditions under which the FAA may release, modify, or amend the terms and conditions of surplus property conveyances. While the FAA has the ability to amend, modify, or release an airport sponsor from a federal obligation, the FAA is not required to do so. The FAA exercises its discretion when releasing a sponsor from any of its obligations. For additional information, refer to chapter 22 of this Order, *Releases from Federal Obligations*.

**1.11. Statutory Limitation on FAA Authority**

The FAA Reauthorization Act of 2018 (Pub. L. 115-254), Section 163 narrowed the scope of the FAA's authority over airport land uses.

**1.12 through 1.14 reserved.**

## Chapter 4: Federal Grant Obligations and Responsibilities

### Updated December 2022

**4.1. Introduction.** This chapter provides a brief description of the three FAA grant programs for airports, the duration of federal obligations, the useful life of grant funded projects, and the legislatively mandated sponsor compliance requirements. It is the responsibility of the FAA Airports District Offices (ADOs) and regional airports divisions to ensure that the sponsors understand and comply with their grant assurances.

**4.2. Sponsor Federal Obligations Under Various Grant Agreements.** Under the various federal grant programs, the sponsor of a project agrees to assume certain federal obligations pertaining to the operation and use of the airport. These federal obligations are embodied in the application for federal assistance as sponsor assurances. The federal obligations become a part of the grant offer, binding the grant recipient when it accepts federal funds for airport development.

**a. Grant Programs** Since 1946, the FAA has administered three primary grant programs for development of airports:

> **(1).** The Federal Aid to Airports Program (FAAP) pursuant to the Federal Airport Act of 1946, as amended, until repealed in 1970.

> **(2).** The Airport Development Aid Program (ADAP) pursuant to the Airport and Airway Development Act of 1970 (1970 Airport Act), as amended, until repealed in 1982.

> **(3).** The Airport Improvement Program (AIP) pursuant to the Airport and Airway Improvement Act of 1982 (AAIA), as amended. (See 49 U.S.C. § 47101, *et seq.*) Grants issued to airports under Public Law 117-58-Infrastructure Investment and Jobs Act referred to as the Bipartisan Infrastructure Law (BIL)[13], contained the same sponsor assurances as the AIP program.

> **(4).** Occasionally, there are time limited special funding programs authorized by Congress to provide federal grants to airports for a specific purpose such as

---

[13] BIL funds were split into different funding buckets for Airport Infrastructure Grants (AIG), Federal Contract Tower program (FCT), and Airport Terminal Program grants (ATP).

12/9/2022                                                                                    5190.6B Change 2

> economic development or recovery.  These have included: American Recovery
> and Reinvestment Act of 2009 (ARRA) (Public Law 111-5); Coronavirus Aid,
> Relief, and Economic Security (CARES) Act (H.R. 748, Public Law 116-136),
> Coronavirus Response and Relief Supplemental Appropriation Act (CRRSAA)
> (Public Law 116-260), American Rescue Plan Act of 2021 (ARPA) (H.R. 1319,
> Public Law 117-2).  These grants were generally time limited and the specific
> grant agreement should be reviewed to determine the federal obligations
> associated with the grant.

In addition, the FAA has on occasion issued additional grant programs.  These were primarily
focused national economic recovery (*e.g*., Coronavirus Aid, Relief, and Economic Security Act
(CARES Act), American Recovery and Reinvestment Act (ARRA), Coronavirus Response and
Relief Supplemental Appropriations (CRRSA)) and contained certain federal obligations for the
life of the grant.

**b. Assurances Pertaining to Grant Agreements.** Each of these FAA administered federal
airport financial assistance programs required airport sponsors to agree to certain assurances
under the authorizing legislation of the grant programs. Certain assurances remain consistent
from one grant program to the next. Other assurances were added by legislative mandate as the
grant programs developed. Some assurances were superseded over time. In addition, the FAA
has statutory authority to prescribe additional assurances or requirements for sponsors. (*See* 49
U.S.C. § 47107(g).) Also, some grant agreements contain special covenants or conditions
intended to address an airport-specific situation.

**c. Special Project Conditions.** This Order generally does not address special conditions under
which the FAA funded a particular project. An example of a special condition might be that
funds are not available to a sponsor until the sponsor provides an updated Airport Layout Plan
(ALP). Special conditions are enforced in the same manner as other federal obligations. (*See*
FAA Order: 5100.38, Airport Improvement Program Handbook, Paragraph 5.23(e) Special
Conditions.)

**4.3. The Duration of Federal Grant Obligations.** Federal obligations relating to the use,
operation, and maintenance of the airport remain in effect throughout the useful life of the
facilities developed under the project, but not to exceed 20 years, unless otherwise defined in the
grant assurances or special conditions of the grant. .

**a. Obligations with Land Acquisition.** In regard to land acquired with federal assistance (*e.g*.,
FAAP, ADAP, AIP), so long as the airport sponsor has taken an ADAP or AIP grant since May
1980, the federal obligations on the acquired land remain in effect until released by the FAA.[14]
The following background information is helpful to understanding this requirement:

> **(1).** An airport sponsor who accepted an ADAP or AIP grant after 1980 agreed
> that the covenants on real property acquired with Federal funds are unlimited.
> This is consistent with federal grant law generally, which provides that a grant of

---

[14] There is no limit on the duration of terms, conditions, and assurances with respect to real property acquired with
federal funds.  (*See* FAA Grant Assurances, *Duration and Applicability;* 14 CFR Part 152, Airport Aid Program,
Appendix D, Paragraph 17).

12/9/2022                                                                                              5190.6B Change 2

real property must be used for its intended purpose until and unless released by the government. The public has been on notice of this since at least 1980.

**(2).** The "Duration and Applicability" section for the current grant assurances[15] and in every set of assurances for an ADAP and AIP grant since 1980 has contained the following language:

The terms, conditions and assurances of this grant agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no



*The useful life of a federally funded airport development project extends only for the period during which it is serviceable and usable with ordinary day-to-day maintenance. Reconstruction, rehabilitation, or major repair of a federally funded airport project without additional federal aid does not automatically extend the duration of its useful life as it applies to grant agreements. Land, however, has no limit to its useful life. As such, obligations associated with land do not expire. (Photo: National Oceanic and Atmospheric Administration (NOAA))*

---

[15] The current grant assurances are available at:  www.faa.gov/airports/aip/grant_assurances/

12/9/2022                                                                         5190.6B Change 2

limit on the duration of the assurances regarding Exclusive Rights and
Airport Revenue so long as the airport is used as an airport. *There shall be
no limit on the duration of the terms, conditions, and assurances with
respect to real property acquired with federal funds.* Furthermore, the
duration of the Civil Rights assurance shall be specified in the assurances.
[italics added.]

**(3).** These assurances apply to all property on the airport acquired with federal
funds, not just property acquired with that project. The assurances thus apply to
any "real property acquired with Federal funds."

**(4).** The regulations implementing the ADAP program also contain the same
basic assurance as to real property acquired with "federal funds." 14 CFR Part
152, Appendix D, paragraph 17 provides as follows:

17. Effective date and duration. These covenants shall become effective
upon acceptance by the sponsor of an offer of Federal aid for the Project
or any portion thereof, made by the FAA and shall constitute a part of the
Grant Agreement thus formed. These covenants shall remain in full force
and effect throughout the useful life of the facilities developed under this
Project, but in any event not to exceed twenty (20) years from the date of
said acceptance of an offer of Federal aid for the Project. However, these
limitations on the duration of the covenants do not apply to the covenant
against exclusive rights and real property acquired with Federal funds.

**(5).** 14 CFR § 200.311, Real Property, sets forth the requirements applicable to
federal grants for real property generally. It confirms the requirements of Grant
Assurance 31, (Disposal of Land,) with respect to the disposition of real property
purchased with a federal grant when the property is no longer needed for the
originally authorized purpose. This regulation applies to all federally financed
lands and provides additional support for the concept that the FAA is entitled to
be reimbursed for the value of its share of the land, just like Grant Assurance 31
provides. For example, an airport sponsor would have to reimburse the FAA for
the Fair Market Value (FMV) of the real property acquired with FAA's FAAP
and ADAP grants, if the airport land is no longer used for airport purposes.

**(6).** The FAAP and ADAP grant assurances provide that they shall not exceed 20
years with respect to facilities developed with the grants. However, the 20-year
limitation arguably applies only to "facilities developed under this Project"- not to
the underlying land - (which always has had an unlimited useful life). The
language from the Sponsor Assurances section of FAA Form 1624, Project
Application (for Federal Aid for Development of Public Airports), p. 5, dated
September, 1964, which was included in the FAAP grants, states:

1. These covenants shall become effective upon acceptance by the
Sponsor of an offer of Federal aid for the Project or any portion thereof,
made by the FAA and shall constitute a part of the Grant Agreement thus
formed. These covenants shall remain in full force and effect throughout

the useful life of the facilities developed under this Project, but in any event not to exceed twenty (20) years from the date of said acceptance of an offer of Federal aid for the Project.

One of the reasons ADAP regulations and grant assurances were revised in 1980 was to clarify and confirm that limitations upon the use of federally purchased land do not expire and must be used for its originally intended purpose. See 45 Fed. Reg. 34784 which explains the 1980 ADAP assurances were revised to be consistent with OMB Circular A-102 which requires that the grantee use that property for the authorized purpose of the original grant.

**b. Additional Continuing Obligations.** There are also two assurances for which the obligation continues without limit as long as the airport is used as a public use airport: Grant Assurance 23, Exclusive Rights, and Grant Assurance 25, Airport Revenues. Grant Assurance 30, Civil Rights remains in effect until the sponsor disposes of the property regardless if the airport has been closed.  Grant Assurance 31, Disposal of Land, remains in effect until all airport land acquired with assistance under AIP has been sold and the FAA has prescribed the use of the federal government's share of the sales proceeds as required by the Grant Assurance.

**c. Private Sponsor Obligations.** Private sponsors' useful life of federally assisted projects shall be no less than 10 years from the date of acceptance of federal aid. The actual grant agreement should be consulted to verify the federal obligations sponsors agreed to and to ensure the sponsor is being held to those assurances. This Order does not replace reading the obligating documents.

**d. Obligations through other Programs.** While this chapter primarily discusses the standard grant assurances for airport sponsors, other obligations may also apply, such as, the Passenger Facility Charge (PFC) program, the Aviation Block Grant Program, Planning Agency Sponsors and Non-Airport Sponsors Undertaking Noise Compatibility Program Projects. Other obligations may also include grant agreement special conditions, covenants in property deeds, and agency or court orders.

**4.4. The Useful Life of Grant Funded Projects.** The useful life  is the period during which an asset or property is expected to be useable for the purpose it was acquired. It may or may not correspond with the item's actual physical life or economic life. (See FAA Order: 5100.38, *AIP Handbook*, Appendix A-1). The AIP Handbook provides the minimum useful life for grant funded projects. (See FAA Order: 5100.38, Table 3-7, Minimum Useful Life). An airport sponsor cannot shorten its obligations by allowing projects to deteriorate.

Reconstruction, rehabilitation, or major repair of a federally funded airport project without additional federal aid does not automatically extend the duration of its useful life  as it applies to grant agreements. Generally, improvements are presumed to last at least 20 years because they are built to FAA standards. If new grants are issued for reconstruction, rehabilitation, or major repair, a new useful life period begins.

An airport sponsor cannot shorten its obligations by allowing projects to deteriorate. FAA regional airports divisions make the determination of when the useful life has expired on a federally funded project that needs reconstruction, rehabilitation, or major repair in order to

continue serving the purpose for which it was developed. See paragraph 4.6.h of this chapter for detailed guidance on the duration of grant obligations.

**4.5. Airport Sponsor Compliance.** Legislatively mandated sponsor assurances have varied over time due to statutory amendments and project specific circumstances. Therefore, in assessing an airport sponsor's compliance status, the FAA must review each grant agreement entered into by the airport sponsor and the FAA in order to determine the airport sponsor's federal obligations accurately and to assess the sponsor's compliance with the applicable assurances.

**4.6. Federal Obligations under the Basic Grant Assurance Requirements.** This section discusses the different assurance lists and airport grant programs. The current grant assurances are available at: www.faa.gov/airports/aip/grant_assurances/.

When the airport sponsor accepts the grant, the assurances become binding contractual federal obligations between the sponsor and the FAA. It is the responsibility of the ADOs and regional airports divisions to ensure sponsors understand and comply with their assurances. The AIP Handbook, Table 2-4, Applicable Grant Assurances (by Sponsor and Project Type), outlines the applicability of the grant assurances to the type of sponsor and project.

**a. Standard Sponsor Assurances.** FAA uses three separate sets of standard sponsor assurances: Airport Sponsors (owners/operators).

> **(1).** Airport Sponsors (owners/operators).
>
> **(2).** Planning Agency Sponsors.
>
> **(3).** Nonairport Sponsors Undertaking Noise Compatibility Program Projects (referred to as nonairport sponsor assurances).

**b. Types of Grant Programs or Projects.** There are four types of airport grant programs or projects that include assurances from one of the three sets of standard assurances:

> **(1). Airport Development or Noise Compatibility Undertaken by an Airport Sponsor.** Requirements for airport development and noise compatibility programs undertaken by airport sponsors are the same. All 39 standard grant assurances for airport sponsors apply. See FAA Order 5100.38, Table 2-5 for more information.
>
> **(2). Airport Planning Undertaken by an Airport Sponsor.** Requirements for airport sponsor planning projects are different from those that apply to airport sponsor development or noise compatibility grants. Several of the numbered assurances for airport sponsors apply to airport planning projects: Grant Assurance 1, *General Federal Requirements*; Grant Assurance 2, *Responsibility and Authority of the Sponsor*; Grant Assurance 3, *Sponsor Fund Availability*; Grant Assurance 5, *Preserving Rights and Powers*; Grant Assurance 6, *Consistency with Local Plans*, Grant Assurance 13, *Accounting System, Audit, and Record Keeping Requirements*; Grant Assurance 18, *Planning Projects*; Grant Assurance 25, *Airport Revenues;* Grant Assurance 30, *Civil Rights*; Grant Assurance 32, *Engineering and Design Services*; Grant Assurance 33, *Foreign Market Restrictions*; and Grant Assurance 34, *Policies, Standards, and*

*Specifications*. The terms, conditions, and assurances of the grant agreement shall remain in full force and effect during the life of the planning project. In addition, Grant Assurances 23, *Exclusive Rights* and 25, *Airport Revenues*, are applicable to planning grants issued to a specific airport and remain in effect as long as the airport remains as an airport.

**(3). Planning Projects Undertaken by Planning Agency Sponsors.** A planning agency sponsor is a governmental entity that has planning responsibilities for an area that includes an airport, but is not the airport sponsor (FAA Order 5100.38 Table 2-6, *Duration and Applicability of Grant Assurances (Planning Agency Sponsors)*). A separate set of standard assurances applies to planning agency sponsors. Several of the applicable assurances mirror the assurance topics for airport sponsor planning projects, but the language is slightly different.

**(4). Noise Compatibility Programs Undertaken by Nonairport Sponsors.[16]** The FAA also may award grants to nonairport sponsor government entities for noise compatibility programs. These include government entities of adjacent communities impacted by aircraft noise, but which are not sponsors of that airport. The assurances for these grants bind the sponsors to specific federal obligations. While these assurances are similar to the airport sponsor assurances, there are some differences. *See* FAA Order 5100.38, Table 2-7.

Specifically, the assurances for nonairport sponsors that undertake a noise program follow a different numbering scheme and exclude airport-specific requirements. For example, airport sponsor Grant Assurance 19, *Operation and Maintenance*, includes a section on operating the airport to serve aeronautical users. This applies only to airport sponsors and is not part of the assurance for nonairport sponsors. For nonairport sponsors, the comparable assurance on operation and maintenance includes only the last section of Grant Assurance 19, *Operation and Maintenance*, which requires the grant recipient to operate and maintain noise compatibility items or noise program implementation items obtained with federal funds. Even though the assurances for airport sponsors and nonairport sponsors have different numbering and vary slightly, the subjects addressed are consistent.

**c. Groupings.** Grant agreements list the assurances in three separate groups:

**(1).** Group "A" *General*, sets forth the basic requirement binding the sponsor to all federal grant assurances all applicable assurances as a condition of accepting a federal grant for airport development, noise compatibility, and airport planning. The general assurance requires the sponsor to include these assurances as part of its grant application. When the sponsor accepts the grant offer, FAA incorporates these assurances into the grant agreement. When the sponsor accepts, the agreement binds both the federal government and the sponsor to its terms.

**(2).** Group "B" *Duration and Applicability*, establishes the length of time that assurances remain in effect and identifies which assurances apply to the various

---

[16] See grant assurances for Non-Airport Sponsors Undertaking Noise Compatibility Program Projects

12/9/2022                                                        5190.6B Change 2

programs or projects. The applicability of the general federal requirements will vary depending on the type of agreement and scope of the project.

**(3).** Group "C" *Sponsor Certification*, lists all of the standard assurances that the sponsor must adhere to under the grant agreement. There are 39 numbered assurances in the *Sponsor Certification* group. Grant Assurance 1, *General Federal*



*The FAA may also award grants to nonairport sponsoring government entities for noise compatibility programs. These could include adjacent communities to the airport that are impacted by aircraft landing or taking off, but which are not sponsors of that airport. The assurances for these grants bind the recipients to specific federal obligations. While these assurances are similar to the airport sponsor assurances, there are differences; they follow a different numbering scheme and exclude airport-specific requirements. (Photo: FAA)*

*Requirements*, covers several other obligations found in Executive Orders, Federal Legislation, and Regulations.

**d. Agency Responsibilities.** The Office of Airport Compliance and Management Analysis (ACO-100) deals primarily with the set of standard assurances for airport sponsors. The FAA Office of Airport Planning and Programming (APP) handles issues involving standard grant assurances for planning agencies and nonairport sponsors. The ADOs and regional airports divisions ensure that the sponsor understands and complies with the applicable assurances.

**4.7 through 4.10 reserved.**