Plaintiff's Exhibit D



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

National Policy

**ORDER 5190.6B Change 3**

Effective Date:
September 15, 2023

**SUBJ**: Airport Compliance Manual

## 1. Purpose

The Airport Compliance Manual provides guidance to FAA employees on the implementation of the FAA's airport compliance program. Under the program, the FAA has the responsibility to assure airport sponsors comply with certain obligations that arise from FAA grant agreements and from deeds of property conveyance for airport use.

## 2. Distribution

The Airport Compliance Manual is located on the FAA Office of Airports website where it is available to all interested parties. See:
https://www.faa.gov/airports/resources/publications/orders/compliance_5190_6/

## 3. Cancellation

This Order cancels and replaces the following chapters of the Airport Compliance Manual:

> Chapter 16, Resolution of Unlawful Revenue Diversion
> Chapter 17, Self-sustainability
> Chapter 18, Airport Rates and Charges
> Chapter 19, Airport Financial Reports

## 4. Explanation of Changes

Since 2009, there have been changes to the laws and policies relating to the Federal obligations of airport sponsors and revisions to the procedures for investigating and resolving complaints that allege noncompliance. To incorporate any changes and provide the most useful and current program guidance to FAA employees, the Office of Airport Compliance and Management Analysis is undertaking a review of the Order and will publish updates as the chapter reviews are completed.

The Office of Airport Compliance and Management Analysis issued two previous changes to the Airport Compliance Manual - on December 3, 2021 Change 1 was issued and on December 9, 2022 Change 2 was issued. This Change 3 to the Airport Compliance Manual is issued to address the following:

- After review of public comments offered on the 2009 update, and subsequent experience with using Order 5190.6B as guidance for the airport compliance program, and issuance of Change 1 and Change 2 to the Order, the FAA is now updating Chapters 16, 17, 18 and 19 of the Order.

## Chapter 4: Federal Grant Obligations and Responsibilities

## Updated November 2022

**4.1. Introduction.** This chapter provides a brief description of the three FAA grant programs for airports, the duration of federal obligations, the useful life of grant funded projects, and the legislatively mandated sponsor compliance requirements. It is the responsibility of the FAA Airports District Offices (ADOs) and regional airports divisions to ensure that the sponsors understand and comply with their grant assurances.

**4.2. Sponsor Federal Obligations Under Various Grant Agreements.** Under the various federal grant programs, the sponsor of a project agrees to assume certain federal obligations pertaining to the operation and use of the airport. These federal obligations are embodied in the application for federal assistance as sponsor assurances. The federal obligations become a part of the grant offer, binding the grant recipient when it accepts federal funds for airport development.

**a. Grant Programs** Since 1946, the FAA has administered three primary grant programs for development of airports:

> **(1).** The Federal Aid to Airports Program (FAAP) pursuant to the Federal Airport Act of 1946, as amended, until repealed in 1970.
>
> **(2).** The Airport Development Aid Program (ADAP) pursuant to the Airport and Airway Development Act of 1970 (1970 Airport Act), as amended, until repealed in 1982.
>
> **(3).** The Airport Improvement Program (AIP) pursuant to the Airport and Airway Improvement Act of 1982 (AAIA), as amended. (See 49 U.S.C. § 47101, *et seq.*) Grants issued to airports under Public Law 117-58-Infrastructure Investment and Jobs Act referred to as the Bipartisan Infrastructure Law (BIL)[1], contained the same sponsor assurances as the AIP program.
>
> **(4).** Occasionally, there are time limited special funding programs authorized by Congress to provide federal grants to airports for a specific purpose such as economic development or recovery. These have included: American Recovery and Reinvestment Act of 2009 (ARRA) (Public Law 111-5); Coronavirus Aid, Relief, and Economic Security (CARES) Act (H.R. 748, Public Law 116-136), Coronavirus Response and Relief Supplemental Appropriation Act (CRRSAA) (Public Law 116-260), American Rescue Plan Act of 2021 (ARPA) (H.R. 1319, Public Law 117-2). These grants were generally time limited and the specific grant agreement should be reviewed to determine the federal obligations associated with the grant.

In addition, the FAA has on occasion issued additional grant programs. These were primarily focused national economic recovery (*e.g.*, Coronavirus Aid, Relief, and Economic Security Act (CARES Act), American Recovery and Reinvestment Act (ARRA), Coronavirus Response and

---

[1] BIL funds were split into different funding buckets for Airport Infrastructure Grants (AIG), Federal Contract Tower program (FCT), and Airport Terminal Program grants (ATP).

Relief Supplemental Appropriations (CRRSA)) and contained certain federal obligations for the life of the grant.

**b. Assurances Pertaining to Grant Agreements.** Each of these FAA administered federal airport financial assistance programs required airport sponsors to agree to certain assurances under the authorizing legislation of the grant programs. Certain assurances remain consistent from one grant program to the next. Other assurances were added by legislative mandate as the grant programs developed. Some assurances were superseded over time. In addition, the FAA has statutory authority to prescribe additional assurances or requirements for sponsors. (*See* 49 U.S.C. § 47107(g).) Also, some grant agreements contain special covenants or conditions intended to address an airport-specific situation.

**c. Special Project Conditions.** This Order generally does not address special conditions under which the FAA funded a particular project. An example of a special condition might be that funds are not available to a sponsor until the sponsor provides an updated Airport Layout Plan (ALP). Special conditions are enforced in the same manner as other federal obligations. (*See* FAA Order: 5100.38, Airport Improvement Program Handbook, Paragraph 5.23(e) Special Conditions.)

**4.3. The Duration of Federal Grant Obligations.** Federal obligations relating to the use, operation, and maintenance of the airport remain in effect throughout the useful life of the facilities developed under the project, but not to exceed 20 years, unless otherwise defined in the grant assurances or special conditions of the grant. .

**a. Obligations with Land Acquisition.** In regard to land acquired with federal assistance (*e.g.*, FAAP, ADAP, AIP), so long as the airport sponsor has taken an ADAP or AIP grant since May 1980, the federal obligations on the acquired land remain in effect until released by the FAA.[2] The following background information is helpful to understanding this requirement:

> **(1).** An airport sponsor who accepted an ADAP or AIP grant after 1980 agreed that the covenants on real property acquired with Federal funds are unlimited. This is consistent with federal grant law generally, which provides that a grant of real property must be used for its intended purpose until and unless released by the government. The public has been on notice of this since at least 1980.
>
> **(2).** The "Duration and Applicability" section for the current grant assurances[3] and in every set of assurances for an ADAP and AIP grant since 1980 has contained the following language:

> The terms, conditions and assurances of this grant agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed

---

[2] There is no limit on the duration of terms, conditions, and assurances with respect to real property acquired with federal funds. (*See* FAA Grant Assurances, *Duration and Applicability;* 14 CFR Part 152, Airport Aid Program, Appendix D, Paragraph 17).

[3] The current grant assurances are available at: www.faa.gov/airports/aip/grant_assurances/

within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. *There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds.* Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances. [italics added.]

**(3).** These assurances apply to all property on the airport acquired with federal funds, not just property acquired with that project. The assurances thus apply to any "real property acquired with Federal funds."

**(4).** The regulations implementing the ADAP program also contain the same basic assurance as to real property acquired with "federal funds." 14 CFR Part 152, Appendix D, paragraph 17 provides as follows:

17. Effective date and duration. These covenants shall become effective upon acceptance by the sponsor of an offer of Federal aid for the Project or any portion thereof, made by the FAA and shall constitute a part of the Grant Agreement thus formed. These covenants shall remain in full force and effect throughout the useful life of the facilities developed under this Project, but in any event not to exceed twenty (20) years from the date of said acceptance of an offer of Federal aid for the Project. However, these limitations on the duration of the covenants do not apply to the covenant against exclusive rights and real property acquired with Federal funds.

**(5).** 14 CFR § 200.311, Real Property, sets forth the requirements applicable to federal grants for real property generally. It confirms the requirements of Grant Assurance 31, (Disposal of Land,) with respect to the disposition of real property purchased with a federal grant when the property is no longer needed for the originally authorized purpose. This regulation applies to all federally financed lands and provides additional support for the concept that the FAA is entitled to be reimbursed for the value of its share of the land, just like Grant Assurance 31 provides. For example, an airport sponsor would have to reimburse the FAA for the Fair Market Value (FMV) of the real property acquired with FAA's FAAP and ADAP grants, if the airport land is no longer used for airport purposes.

**(6).** The FAAP and ADAP grant assurances provide that they shall not exceed 20 years with respect to facilities developed with the grants. However, the 20-year limitation arguably applies only to "facilities developed under this Project"- not to the underlying land - (which always has had an unlimited useful life). The language from the Sponsor Assurances section of FAA Form 1624, Project Application (for Federal Aid for Development of Public Airports), p. 5, dated September, 1964, which was included in the FAAP grants, states:

> 1. These covenants shall become effective upon acceptance by the Sponsor of an offer of Federal aid for the Project or any portion thereof, made by the FAA and shall constitute a part of the Grant Agreement thus formed. These covenants shall remain in full force and effect throughout the useful life of the facilities developed under this Project, but in any event not to exceed twenty (20) years from the date of said acceptance of an offer of Federal aid for the Project.

> One of the reasons ADAP regulations and grant assurances were revised in 1980 was to clarify and confirm that limitations upon the use of federally purchased land do not expire and must be used for its originally intended purpose. See 45 Fed. Reg. 34784 which explains the 1980 ADAP assurances were revised to be consistent with OMB Circular A-102 which requires that the grantee use that property for the authorized purpose of the original grant.

**b. Additional Continuing Obligations.** There are also two assurances for which the obligation continues without limit as long as the airport is used as a public use airport: Grant Assurance 23, Exclusive Rights, and Grant Assurance 25, Airport Revenues. Grant Assurance 30, Civil Rights remains in effect until the sponsor disposes of the property regardless if the airport has been closed. Grant Assurance 31, Disposal of Land, remains in effect until all airport land acquired with assistance under AIP has been sold and the FAA has prescribed the use of the federal government's share of the sales proceeds as required by the Grant Assurance.

**c. Private Sponsor Obligations.** Private sponsors' useful life of federally assisted projects shall be no less than 10 years from the date of acceptance of federal aid. The actual grant agreement should be consulted to verify the federal obligations sponsors agreed to and to ensure the sponsor is being held to those assurances. This Order does not replace reading the obligating documents.

**d. Obligations through other Programs.** While this chapter primarily discusses the standard grant assurances for airport sponsors, other obligations may also apply, such as, the Passenger Facility Charge (PFC) program, the Aviation Block Grant Program, Planning Agency Sponsors and Non-Airport Sponsors Undertaking Noise Compatibility Program Projects. Other obligations may also include grant agreement special conditions, covenants in property deeds, and agency or court orders.

**4.4. The Useful Life of Grant Funded Projects.** The useful life is the period during which an asset or property is expected to be useable for the purpose it was acquired. It may or may not correspond with the item's actual physical life or economic life. (See FAA Order: 5100.38, *AIP Handbook*, Appendix A-1). The AIP Handbook provides the minimum useful life for grant funded projects. (See FAA Order: 5100.38, Table 3-7, Minimum Useful Life). An airport sponsor cannot shorten its obligations by allowing projects to deteriorate.

Reconstruction, rehabilitation, or major repair of a federally funded airport project without additional federal aid does not automatically extend the duration of its useful life as it applies to grant agreements. Generally, improvements are presumed to last at least 20 years because they are built to FAA standards. If new grants are issued for reconstruction, rehabilitation, or major repair, a new useful life period begins.

An airport sponsor cannot shorten its obligations by allowing projects to deteriorate. FAA regional airports divisions make the determination of when the useful life has expired on a federally funded project that needs reconstruction, rehabilitation, or major repair in order to continue serving the purpose for which it was developed. See paragraph 4.3 of this chapter for detailed guidance on the duration of grant obligations.

**4.5. Airport Sponsor Compliance.** Legislatively mandated sponsor assurances have varied over time due to statutory amendments and project specific circumstances. Therefore, in assessing an airport sponsor's compliance status, the FAA must review each grant agreement entered into by the airport sponsor and the FAA in order to determine the airport sponsor's federal obligations accurately and to assess the sponsor's compliance with the applicable assurances.

**4.6. Federal Obligations under the Basic Grant Assurance Requirements.** This section discusses the different assurance lists and airport grant programs. The current grant assurances are available at: www.faa.gov/airports/aip/grant_assurances/.

When the airport sponsor accepts the grant, the assurances become binding contractual federal obligations between the sponsor and the FAA. It is the responsibility of the ADOs and regional airports divisions to ensure sponsors understand and comply with their assurances. The AIP Handbook, Table 2-4, Applicable Grant Assurances (by Sponsor and Project Type), outlines the applicability of the grant assurances to the type of sponsor and project.

**a. Standard Sponsor Assurances.** FAA uses three separate sets of standard sponsor assurances: Airport Sponsors (owners/operators).

>  **(1).**  Airport Sponsors (owners/operators).
>
>  **(2).**  Planning Agency Sponsors.
>
>  **(3).**  Nonairport Sponsors Undertaking Noise Compatibility Program Projects (referred to as nonairport sponsor assurances).

**b. Types of Grant Programs or Projects.** There are four types of airport grant programs or projects that include assurances from one of the three sets of standard assurances:

>  **(1). Airport Development or Noise Compatibility Undertaken by an Airport Sponsor.** Requirements for airport development and noise compatibility programs undertaken by airport sponsors are the same. All 39 standard grant assurances for airport sponsors apply. See FAA Order 5100.38, Table 2-5 for more information.
>
>  **(2). Airport Planning Undertaken by an Airport Sponsor.** Requirements for airport sponsor planning projects are different from those that apply to airport sponsor development or noise compatibility grants. Several of the numbered assurances for airport sponsors apply to airport planning projects: Grant Assurance 1, *General Federal Requirements*; Grant Assurance 2, *Responsibility and Authority of the Sponsor*; Grant Assurance 3, *Sponsor Fund Availability*; Grant Assurance 5, *Preserving Rights and Powers*; Grant Assurance 6, *Consistency with Local Plans*, Grant Assurance 13, *Accounting System, Audit, and Record Keeping Requirements*; Grant Assurance 18, *Planning Projects*; Grant

Assurance 25, *Airport Revenues;* Grant Assurance 30, *Civil Rights*; Grant Assurance 32, *Engineering and Design Services*; Grant Assurance 33, *Foreign Market Restrictions*; and Grant Assurance 34, *Policies, Standards, and Specifications*. The terms, conditions, and assurances of the grant agreement shall remain in full force and effect during the life of the planning project. In addition, Grant Assurances 23, *Exclusive Rights* and 25, *Airport Revenues*, are applicable to planning grants issued to a specific airport and remain in effect as long as the airport remains as an airport.

**(3). Planning Projects Undertaken by Planning Agency Sponsors.** A planning agency sponsor is a governmental entity that has planning responsibilities for an area that includes an airport, but is not the airport sponsor (FAA Order 5100.38 Table 2-6, *Duration and Applicability of Grant Assurances (Planning Agency Sponsors)*). A separate set of standard assurances applies to planning agency sponsors. Several of the applicable assurances mirror the assurance topics for airport sponsor planning projects, but the language is slightly different.

**(4). Noise Compatibility Programs Undertaken by Nonairport Sponsors.**[4] The FAA also may award grants to nonairport sponsor government entities for noise compatibility programs. These include government entities of adjacent communities impacted by aircraft noise, but which are not sponsors of that airport. The assurances for these grants bind the sponsors to specific federal obligations. While these assurances are similar to the airport sponsor assurances, there are some differences. *See* FAA Order 5100.38, Table 2-7.

Specifically, the assurances for nonairport sponsors that undertake a noise program follow a different numbering scheme and exclude airport-specific requirements. For example, airport sponsor Grant Assurance 19, *Operation and Maintenance*, includes a section on operating the airport to serve aeronautical users. This applies only to airport sponsors and is not part of the assurance for nonairport sponsors. For nonairport sponsors, the comparable assurance on operation and maintenance includes only the last section of Grant Assurance 19, *Operation and Maintenance*, which requires the grant recipient to operate and maintain noise compatibility items or noise program implementation items obtained with federal funds. Even though the assurances for airport sponsors and nonairport sponsors have different numbering and vary slightly, the subjects addressed are consistent.

**c. Groupings.** Grant agreements list the assurances in three separate groups:

**(1).** Group "A" *General*, sets forth the basic requirement binding the sponsor to all federal grant assurances all applicable assurances as a condition of accepting a federal grant for airport development, noise compatibility, and airport planning. The general assurance requires the sponsor to include these assurances as part of its grant application. When the sponsor accepts the grant offer, FAA incorporates

---

[4] See grant assurances for Non-Airport Sponsors Undertaking Noise Compatibility Program Projects

these assurances into the grant agreement. When the sponsor accepts, the agreement binds both the federal government and the sponsor to its terms.

**(2).** Group "B" *Duration and Applicability*, establishes the length of time that assurances remain in effect and identifies which assurances apply to the various programs or projects. The applicability of the general federal requirements will vary depending on the type of agreement and scope of the project.

**(3).** Group "C" *Sponsor Certification*, lists all of the standard assurances that the sponsor must adhere to under the grant agreement. There are 39 numbered assurances in the *Sponsor Certification* group. Grant Assurance 1, *General Federal Requirements*, covers several other obligations found in Executive Orders, Federal Legislation, and Regulations.

**d. Agency Responsibilities.** The Office of Airport Compliance and Management Analysis (ACO-100) deals primarily with the set of standard assurances for airport sponsors. The FAA Office of Airport Planning and Programming (APP) handles issues involving [standard grant assurances for planning agencies and nonairport sponsors](). The ADOs and regional airports divisions ensure that the sponsor understands and complies with the applicable assurances.

**4.7 through 4.10 reserved.**