

| U.S. Department of Transportation **Federal Aviation Administration** | Northwest Mountain Region<br>Colorado · Idaho · Montana · Oregon · Utah<br>Washington · Wyoming | Denver Airports District Office<br>26805 E. 68th Ave., Suite 224<br>Denver, CO 80249 |

March 20, 2024

Ms. Nuria Rivera-Vandermyde
City Manager
City of Boulder Transportation and Mobility
1777 Broadway
Boulder Colorado 80302

Dear Ms. Rivera-Vandermyde

This letter is in response to your letter regarding the federal obligations related to airport land and property interests acquired with federal assistance at the Boulder Municipal Airport (BDU). You have raised questions related to a scenario in which the City of Boulder is considering a proposal to close the airport and repurpose the site for residential development.

Since 1946, the FAA has administered several federal airport financial assistance programs including the Federal Aid to Airports Program (FAAP), the Airport Development Aid Program (ADAP), and the Airport Improvement Program (AIP). Accepting financial assistance under these programs requires airport sponsors to agree to certain assurances linked to the authorizing legislation of the grant programs. The City of Boulder has accepted financial assistance for land acquisition and an easement under FAAP, ADAP, and AIP grant programs. These FAA programs require that land interests must be used for the originally intended purpose for which they were acquired. In addition, the associated federal obligations remain in effect in perpetuity unless released by the Federal Government.

Our responses to your specific questions are as follows:

**City of Boulder Question 1.** - Tracts 1, 4-I and 5-I (as labeled on the Airport's most recent Exhibit "A" / Airport Property Map) were acquired with federal assistance provided under grant programs that preceded the Airport Improvement Program, in 1959, 1977, and 1963, respectively. Each of the grant agreements associated with these acquisitions provided that their duration would not exceed twenty years. Nevertheless, in recent discussions with City staff, the FAA asserted that these grant agreements never expire. Please explain.

**FAA Response 1.** – Grant assurances associated with land purchased with Federal aid do not expire and the land must be used in perpetuity for its originally intended purpose. See FAA Order 5190.6B, *Airport Compliance Manual*, para. 4.3.a., pp, 4-2 – 4-3; 14 CFR part 152, Appendix D, Grant Assurance 17. This regulatory and policy requirement, which was noticed in the Federal Register, 45 Fed. Reg. 34782 (May 22, 1980), stated:

> Assurance 17 has been revised to provide that the 20 year limitation on the effectiveness of the assurances does not apply to those affecting the use of real property acquired with

Federal funds. This is consistent with attachment N, Property Management Standards of OMB Circular A-102 which requires that grantee use the property for the authorized purposes of the original grant as long as it is needed.

As such, an airport sponsor who accepted an FAAP, ADAP, or AIP grant agreed that the covenants on real property acquired with Federal funds are in perpetuity unless released by the Federal Government. See FAA Order 5190.6B, para. 4.3.a., pp. 4-2 - 4-3.

**City of Boulder Question 2**. - Tract 12 is a narrow "construction easement" which was acquired with federal assistance provided under the Airport Improvement Program. The underlying grant agreement provides, "[T]here shall be no limit on the duration of the . . . assurances with respect to real property acquired with Federal funds." Please indicate whether the FAA considers a construction easement to constitute "real property" subject to the foregoing provision.

**FAA Response 2. -** The easement was acquired in 1991 to facilitate construction access and remains in effect today. The FAA is not aware of any time limits or expiration of the easement in question and the easement runs with the land. The grant assurances associated with the easement also run with the land.

**City of Boulder Question 3**. If the FAA asserts that the grant agreements underlying Tracts 1, 4-I, 5-I, and/or 12 do not expire, please explain the procedure the City would be required to satisfy to seek a release from the assurances in such grant agreements that would allow the Airport to close.

**FAA Response 3. -** There are nuances with individual airport closures, but our general guidance can be found in FAA Order 5190.6B, *Airport Compliance Manual*, Chapter 22. The general closure package requirements outlined in FAA Order 5190.6B paragraphs 22.23-22.26, pp. 22-15 – 22-17, are included in Enclosure A of this letter.

As you review this information, it is important to note that it is the FAA's policy to strengthen the national airports system and not to support the closure of public airports. The FAA has rarely approved an application to close a federally obligated airport. Such approvals were granted only in highly unusual circumstances where closing the airport provided a benefit to civil aviation such as funding a replacement airport in the community.

When requesting the release of the entire airport FAA Order 5190.6B paragraph 22.20 applies. Paragraph 22.20(a) Approval Authority states:

> The FAA Associate Administrator for Airports (ARP-1) [i.e., the Associate Administrator for Airports] is the FAA approving official for a sponsor's request to be released from its federal obligations for the purposes of abandoning or disposing of an entire airport before disposal can occur. That authority is not delegated. A copy of the sponsor's request, including related exhibits and documents, and a copy of the FAA Airports regional statement supporting and justifying the proposed action shall be provided to ARP-1.

The evaluation performed by the FAA Regional office and Airports District Office will consider, among other things, information about the airport including operations, based aircraft, and the

current and future overall benefit provided to civil aviation. We will also examine any potential benefits and justification provided by the sponsor to demonstrate how the closure of the airport will benefit civil aviation.

Today, Boulder Municipal Airport is a general aviation (GA) airport with over 150 based aircraft, according to the airport manager, and has approximately 56,000 annual operations. It also has a hangar waiting list with over 250 individuals seeking access to the airport. This is a healthy activity level for a GA airport in the National Plan of Integrated Airport Systems (NPIAS). Boulder Municipal Airport continues to greatly benefit civil aviation as a GA airport, with the FAA investing $12,400,999.80 in AIP funds since 1982. Based on what we know today, it appears highly unlikely the regional office could provide the Associate Administrator for Airports with a statement supporting and justifying a proposed action to close the airport.

**City of Boulder Question 4**. - If the FAA asserts that the grant agreements underlying Tracts 1, 4-I, 5-I, and/or 12 do not expire, and assuming that the FAA were willing to grant the City a release from the assurances that allowed the Airport to close, please explain whether the City would be required to remit any proceeds from the disposition of these Tracts to the FAA.

**FAA Response 4.** - Yes, at a minimum, fair market value (FMV) compensation of the federal share is required for the disposal of all airport real property acquired with federal funds. If the City was allowed to close the airport, the current FMV, at highest and best use, of Tracts 1, 4-I, 5-I, and 12 would be required to be reinvested or repaid to the FAA. See FAA Order 5190.6B para. 22.19(b), pp. 22-13.

This letter serves to inform the City of Boulder, an obligated airport sponsor of the Boulder Municipal Airport, as to its responsibilities under the FAA's grant assurances, policy, and guidance. It also serves to clarify the length or terms of said grant assurances. This letter does not constitute a final agency decision judicially reviewable under 49 U.S.C. section 46110, as to whether or not the FAA would approve or disapprove an application for airport closure.

If you have any questions regarding your obligations or this letter, please feel free to contact me directly.

Regards,

John P Bauer
Manager, Denver Airports District Office

cc:    Ms. Natalie Stiffler, Director of Transportation and Mobility – City of Boulder
       Mr. John Kinney, Airport Manager - City of Boulder
       Steven L Osit, Partner - Kaplan Kirsch & Rockwell

enclosure